STATE, ex rel., J. W. GOODELL *vs.* J. W. McGEARY.

May Term, 1897.

Present: Ross, C. J., Rowell, Tyler, Munson, Start and Thompson, JJ.

*Charter Construed—Quo Warranto—Election—Judicial Discretion.*

Under a city charter which requires the legal voters in each ward to elect annually one alderman "from among the legal voters therein," a candidate to be eligible must be a legal voter in the ward at the time of the election. It is not enough that he be a legal voter in the city, residing in the ward.

Purchasing a lot, erecting and furnishing a dwelling thereon, and completing every arrangement for its occupation as a home, are only acts preparatory to a change of residence and do not constitute that change, while the owner still occupies, of right, his former place of abode.

When a majority of the votes cast at an election are given for a candidate who is ineligible, the opposing candidate, though eligible and receiving all the other votes, is not elected, especially where it does not appear that those who voted for the leading candidate knew that he was ineligible.

The granting or withholding of leave to file the information for a writ of *quo warranto* rests in the sound discretion of the court, but, the office being an important one and the term of considerable duration, the present is held a proper case for the judgment of ouster.

COMPLAINT AND PETITION alleging that the respondent usurps the office of alderman and praying that a writ of *quo warranto* issue against him, to the Supreme Court, for the County of Chittenden at the May Term, 1897. The defendant answered and testimony was taken. The facts disclosed by the pleadings and evidence are stated in the opinion. The complaint was made by the State's Attorney as such, and also upon relation.

*Roberts & Roberts* and *W. L. Burnap* for the relator.

The charter was intended to effect a distribution of the powers of government among the wards. The distinction between the city voters and the ward voters is maintained throughout. Thus, the City Judge is to be elected "from among the freemen of the city," but ward officers, "by the legal voters of each ward," "from among the legal voters therein." The word, "therein" refers to ward, not to city, for city is not named in the sentence. Consequently the candidate for alderman must be qualified to vote for alderman and this requires a two months' residence.

The respondent had not the required residence for he did not begin to reside in the fifth ward until January 6, while the election occurred March 2. All that he had done before that time was preparation merely. Residence is something more than intention, it is a fact. *Jamaica* v. *Townshend*, 19 Vt. 267.

By V. S. ch. 82, the rights of the relator are determinable in this proceeding. The respondent being disqualified, his election was a nullity and the relator having received the greatest number of lawful votes was elected. *Spear* v. *Robinson*, 29 Me. 531; II Spelling Extr. Rel. §§ 1786, 1789; *State* v. *Swearingen*, 12 Ga. 23; *State* v. *Gastinel*, 20 La. An. 114.

This is not a case where the court can exercise a discretion as in *State* v. *Fisher*, 28 Vt. 714, and *State* v. *Mead*, 56 Vt. 353, for this is a matter of private right as well as public concern. This statute was first adopted in 1876, and grew

out of the litigation of that period (*State* v. *Smith*, 48 Vt,
14, 266) and was designed to shape the common law
remedy of *quo warranto* to the trial and determination of
the rights of the respective claimants. It is not like the
statute, 9 Ann. ch. 20; Ang. & Ames Corp. 685. It is not a
petition but a complaint. In this State the court has
exercised a discretion, as to allowing a petition, only in
cases when the State was not a party. Where the
prosecution was by the State's Attorney the court has
refused to exercise a discretion. *State* v. *Harris*, 52 Vt. 216;
*State* v. *Bradford*, 32 Vt. 50. In such cases leave to file
is not necessary. Ang. & Ames Corp. 687, 698. If there
can be found decisions which hold that a candidate receiving
the second highest number of legal votes acquires no title
to the office by reason of the ineligibility of the person
receiving the highest number, these lack force and
application to this case under a statute which provides
for this very thing and for determining the right of each.

*Seneca Haselton* for the respondent.

The only qualification for eligibility to the office of alder-
man was that the candidate should be a legal voter in the
city and a resident of the ward. The word "therein" has
only a territorial signification.

Even if two months' residence was required, the respond-
ent complied with the requirement. His residence was
actually in the fifth ward from the first of January.

But if the respondent cannot hold the office, the relator is
not entitled to it. The votes cast for the respondent are
not to be ignored in the count, and they prevented the
election of the relator. An election by a minority is not to
be tolerated in this country. McCrary, Elections (3 ed.)
pp. 198, 199, 200 and 201; Cooley, Const. Lim. (6 ed.)
780; Dillon, Mun. Corp. (4 ed.) § 196; *State* v. *Giles*, 52
Am. Dec. 149; *Saunders* v. *Haynes*, 13 Cal. 145; *State* v.
*Smith*, 14 Wis. 497; *People* v. *Clute*, 50 N. Y. 451: 10 Am.
Rep. 508; *Com.* v. *Cluley*, 56 Pa. 270; *Barnum* v. *Gilman*,

27 Minn. 466: 38 Am. Rep. 304; *Sublett* v. *Bedwell*, 47 Miss. 266: 12 Am. Rep. 338; *In re Corliss*, 11 R. I. 638: 23 Am. Rep. 538; *People* v. *Molitor*, 23 Mich. 341. See the speech of L. P. Poland in the case of *Smith* v. *Brown*, Cong. Globe, 2d session 40th Cong. pp. 1199, 1200, and of J. S. Morrill in the case of Abbott, Cong. Globe, 2d session 42d Cong. pp. 2387, 2389, both of which cases are noticed by McCrary, *ubi supra*.

Even the English rule is against the relator, for that requires proof that the electors who voted for the ineligible candidate had notice that he was ineligible. *King* v. *Hawkins*, 10 East. 211; *Rex* v. *Parry*, 14 East. 549; *Regina* v. *Mayor of Tewksbury*, 3 L. R. Q. B. 628.

At all events, the court should in the exercise of a sound discretion refuse the writ. The respondent lacked, at any rate, only four days of the necessary residence. A construction of the charter will be valueless for it has since been changed. The power and duty of the court to deny the writ is clear. *State* v. *Fisher*, 28 Vt. 714; *State* v. *Mead*, 56 Vt. 353; *Com.* v. *Jones*, 12 Pa. 365; *King* v. *Sargent*, 5 T. R. 466.

Ross, C. J. The disposition of this case involves several inquiries.

(1) Was J. W. McGeary duly elected alderman of ward five in the city of Burlington at the annual meeting holden March 2, 1897?

He received a majority of the votes cast for such officer at that meeting. Was he then eligible to the office? The answer to this question depends upon the ascertainment of the length of residence in ward five, which the charter of the city then required to render him qualified to hold the office, and whether he had resided in that ward for the required length of time. There is no contention in regard to his qualifications for the office in other respects.

The charter of the city, as it was March 2, 1897, divided the city into five wards. The same section of the

charter which makes the division provides: "The legal
voters in each ward shall annually elect one alderman, and
the ward officers hereafter named, from among the legal
voters therein, and shall also vote for Mayor and City
Judge." We think that this requires a person to be eligible
to the office of alderman to be a legal voter in the ward.
This is the ordinary and natural meaning of the language,
"from among the legal voters therein." "Therein" means
in the ward at the time of the annual election. That is, the
time the alderman is to be elected or selected out from
among the legal voters in the ward. It does not mean, as
contended by the counsel for Mr. McGeary, from among the
legal voters for Mayor or City Judge, or other city officer,
then resident in that ward. This would make the quoted
clause read, "from among the legal voters of the city then
resident in the ward." It would apply to the other ward
officers as well. The ward officers, by other provisions of
the charter, are to be chosen by the legal voters of the
ward. Section thirteen of the charter creates a vacancy in
the office of alderman if he removes from the ward, to
commence from a certain specified time. We find no
provision of the charter which changes the ordinary and
natural meaning of the clause quoted, or allows the voters
of a ward to select their alderman from any other class
than their own number, or from the then legal voters in the
ward. The charter prescribes the qualifications of voters at
a city election, and also the qualifications of voters in a ward
election. For the latter he must be a voter in a city election.
The charter then further provides: "Every such voter shall
vote only in the ward of which he is at the time an
inhabitant, and he shall not vote for alderman, school
commissioner, or ward officers, in any ward in which he has
not resided for two months preceding any such election."
Had Mr. McGeary resided in ward five for two months
prior to the annual election of March 2, 1897, when he
claims to have been elected alderman for that ward? He

admits that for some years prior to January 1, 1897, he had resided in ward four of the city. There, he had rooms which he occupied with his wife. He continued to occupy these rooms and pay rent therefor until January 6, 1897. He paid rent by the month until January 1, 1897. Before that time he had arranged with his landlord that if he remained longer than until January 1, 1897, he should pay rent only for the time he remained. Hence until January 6, 1897, he occupied these rooms with his wife and slept in them of right. In fact he did not remove from them and take up his abode or place of dwelling in his new house in ward five until January 6, 1897. All he had done in purchasing the lot in ward five, in erecting a dwelling house thereon, in preparing it for occupancy, in moving into it the things necessary for occupying it for a home, from his rooms in ward four and from other sources, was preparatory to making his abode therein January 6, 1897. For a year or more he had been intending to make the new house his home at some future time, but the intention alone, or with preparations added, did not make it his home. The final act which transferred his home from the rooms in ward four to the new house in ward five was when he ceased to occupy the rooms with his wife, as a place of abode on January 6, 1897, and took up his abode in his new house in ward five. Hence on March 2, 1897, he had not resided two full months in ward five, was not therein a legal voter for ward officers, and therefore not eligible to be elected alderman for that ward.

(2). Was the relator duly elected alderman for ward five at this election? He did not receive a majority of the votes cast. It is not established that the legal voters of the ward who cast their votes for Mr. McGeary knew that the provisions of the then charter required them to elect an alderman from among the legal voters in the ward, nor that he was not then a legal voter in the ward. By all the decisions, English and American, such knowledge by the

voter must be clearly established to have his vote treated as knowingly and purposely cast for a person ineligible to the office, and for that reason not to be counted but to be treated as thrown away. Hence under the most liberal rule in regard to rejecting votes cast by legal voters at an election, the votes cast for Mr. McGeary are not to be treated as though they had not been cast. But under our system of government where the will of the legal voters, as expresesd by their ballots, controls, it has been almost universally held that to ensure an election a majority or plurality,—as may, by law, be required,—of the legal votes cast must be received. Votes cast by legal voters are not to rejected, although, by the voter cast for a person known to be ineligible for the office. *King* v. *Hawkins*, 10 East. 210 ; *Rex* v. *Parry*, 14 East. 549 ; *State* v. *Giles*, 52 Am. Dec. 149 and note, and other cases cited by the defendant. Hence the relator cannot be declared elected if McGeary is ousted.

(3). It is conceded, as is held by our decisions, that the granting, or withholding, leave to file an information in the nature of a *quo warranto* against a respondent for exercising the functions of an office to which he has not been duly elected, either because he did not receive the required number of legal votes, or was not then eligible to the office, rests in sound judicial discretion. If the office is of very small importance; if it is for a short term, or the term has nearly expired; if no other person complains of being deprived of the office; and if the objection taken to the respondent's holding the office is technical and of no considerable practical importance, the leave to file an information is refused. *State* v. *Fisher*, 28 Vt. 714, endorsed in *State* v. *Mead*, 56 Vt. 353. But if it is an office of importance, the proper exercise of which may seriously affect public interests or private rights, like the management and control of great moneyed corporations, or the quiet and good government of a municipality, involving the interests of large numbers, leave is usually granted to file the information, and

judgment of ouster from the office is rendered thereon, although no other person has been duly elected to the office. The office in contention is an important one, touching many interests of the largest city of the State and of its inhabitants, and it is to continue for nearly two years. Under our form of government, "of the people, by the people, for the people," it is of importance that no one should be allowed to exercise the functions of an important municipal office unless duly elected thereto according to law. In no other way can a high respect for law be maintained. Without a general prevalence of high respect for the law among the people, the rights of the people become unstable and insecure. No one has been legally elected alderman for ward five. It is an office of importance. It is the right of the legal voters of the ward to determine who shall serve them in that capacity.

> *Let the information be filed and judgment of ouster against the respondent be entered thereon. No costs to either party.*