A. PATTEN, Appellant, v. H. B. HASELTON, JOHN KERPER, P. W. SCHENKELBERG, FRED NEUMAYER, H. D. HINZ, Board of Canvassers and Board of Supervisors in and for Carroll County, Iowa, Appellees.

**Elections:** DEATH OF CANDIDATE: VACANCY. When the death of a candidate for public office occurred so recently before the election that it was practically impossible to fill the vacancy, but he received a plurality of the votes without knowledge generally of the voters that he was deceased, the plurality vote cast for him will prevent the election of another candidate for the same office having a less number of votes; for although deceased was not a person in a legal sense the next highest candidate did not receive the greatest number of votes, within the meaning of the statutes.

*Appeal from Carroll District Court.*—HON. M. E. HUTCHINSON, Judge.

TUESDAY, APRIL 7, 1914.

ACTION of mandamus against the members of the board of supervisors of Carroll county acting as canvassers of elec-

tion returns. The prayer of the petition is that the defendants be ordered to declare the plaintiff duly elected, at the general election of 1912, as a member of the board of supervisors of Carroll county for the term beginning January 1, 1914. Upon trial had, plaintiff's petition was dismissed, and he appeals.—*Affirmed.*

*Lee & Robb* and *Chas. C. Helmer,* for appellant.

*Reynolds & Meyers* and *E. A. Wissler, Douglas Rogers,* and *Brown McCrary,* for appellees.

EVANS, J.—Some controversy is presented over questions of practice. The defendants challenge the right of the plaintiff to try the question presented in an action of mandamus. In view of our conclusions on other features of the case, we shall have no occasion to pass upon this question. Also the appellant contends that the case is triable here de novo, on appeal, whereas the defendants contend that it is triable on errors only.

We find ourselves in accord with the trial court in the finding of facts. It is therefore immaterial, for the purpose of this appeal, whether it be deemed triable de novo or otherwise.

The material facts are undisputed. The plaintiff was the regular Republican candidate upon the ballot in the general election of 1912 in Carroll county for the office of county supervisor, for the term to begin January 1, 1914. One Shirck was the regular democratic candidate upon the ballot for the same office. At 8:30 o'clock of the night preceding the election day, Shirck died. The election proceeded on the following day without any change in the official ballot, and without any attempt at filling the vacancy on the part of the party officials, and without knowledge on the part of the voters generally that the death of the candidate had occurred. Upon a canvass of the election returns, by the canvassing board, it was found that more than 1,800 votes had

been cast for Shirck, and that about 1,100 were cast for the plaintiff. No other candidate received an equal number with the plaintiff. It will be noted, therefore, that the highest number of votes cast, were cast for the deceased candidate, and the next highest number were cast for the plaintiff. It is the contention of plaintiff that the death of Shirck. prevented his election, even though a majority of the votes were cast for him, and that the plaintiff therefore was the person who received the greatest number of votes. The argument is that the death of Shirck before the day of election created a vacancy upon the Democratic ticket, and that the statute points out the method by which such vacancy should have been filled, and that the failure of the party officials to adopt such method left the democratic ticket without a candidate, and rendered nugatory all votes which purported to be cast for the' dead candidate. The following sections of the Code are involved:

Section 1087-a24 (Code, Supp. 1907):

Vacancies occurring after the holding of any primary election occasioned by death, withdrawal or change of residence of any candidate, or from any other cause, shall be filled by the party committee for the county, district, or state, as the case may be, representing the party in which the vacancy nomination occurs.

(Section 1102:)

If a candidate declines a nomination, or dies before election day, or should any certificate of nomination or nomination paper be held insufficient or inoperative by the officer with whom it may be filed, or in case any objection made to any certificate of nomination, nomination paper, or to the eligibility of any candidate therein named, is sustained by the board appointed to determine such questions as hereinafter provided, the vacancy or vacancies thus occasioned may be filled by the convention, caucus, meeting or primary, or other persons making the original nominations, or in such a manner as such convention, caucus, meeting or primary has previously provided. If the time is insufficient for again

holding such convention, caucus, meeting or primary, or in case no such previous provisions being made, such vacancy shall be filled by the regularly elected or appointed executive or central committee of the particular division or district representing the political party or persons holding such convention, primary, meeting or caucus, and certified as hereinbefore provided. The certificates of nominations made to supply such vacancies shall state, in addition to the facts hereinbefore required, the name of the original nominee, the date of his death or declination of nomination, or the fact that the former nomination has been held insufficient or inoperative, and the measures taken in accordance with the above requirements for filling a vacancy, and shall be signed and sworn to by the presiding officer and secretary of the convention, caucus, meeting or primary, or by the chairman and secretary of the committee, as the case may be.

(Section 1108:)

The name supplied for a vacancy by the certificate of the secretary of state, or by nomination certificates or papers for a vacancy filed with the county auditor, or city or town clerk, shall, if the ballots are not already printed, be placed on the ballots in place of the name of the original nominee, or, if the ballots have been printed, new ballots, whenever practicable, shall be furnished. Whenever it may not be practicable to have new ballots printed, the election officers having charge of them shall place the name supplied for the vacancy upon each ballot used before delivering it to the judges of election. If said ballots have already been delivered to the judges of election, said auditor or clerk shall immediately furnish the name of such substituted nominee to all judges of election within the territory in which said nominee may be a candidate, and such election officer having charge of the ballots shall place the name supplied for the vacancy upon each ballot issued before delivering it to the voter, by affixing a paster, or by writing or stamping the name thereon.

(Section 1170:)

All canvasses of returns shall be public, and the persons having the greatest number of votes shall be declared elected.

It is argued that a dead man is not a "person," within the meaning of section 1170. As a legal proposition, this may be conceded; but it does not become decisive of the case. It can properly be said that, because of his death, Shirck was not a "person having the greatest number of votes." This was the holding in *State v. Frear*, 144 Wis. 79 (128 N. W. 1068, 140 Am. St. Rep. 992), which is relied on by appellant. It can also be properly said that, because Shirck was not a "person" within the meaning of section 1170, the canvassing board could not declare him elected. On the other hand, though plaintiff was a "person" within the meaning of this section, yet, in an important sense, he did not have the "greatest number" of votes. It is quite clear to us that the case cannot be determined upon the mere terms of this section, because the contingency now confronting us was not within the contemplation of such section.

Turning to the sections above quoted relating to the filling of vacancies upon a ballot, it would be uncandid to hold, upon the facts appearing in this record, that it was a practical possibility for the party officials to have filled the vacancy in time for the opening of the polls. With one or two exceptions, none of these officials knew of the death until the following day and after the voting had begun. The precise question presented to us therefore is: Where a regular candidate dies only a few hours before election day, so that the time intervening between such death and the opening of the polls is so brief that fair compliance with the provisions of the statute for filling vacancies is impossible, and where the name of such dead candidate appears upon the official ballot at the time of the voting, and where the fact of his death is not generally known to the voters, and where a majority of the voters vote for him as a purported candidate, will the candidate having the next highest number of votes be entitled, as a matter of law, to claim his own election? This precise question is involved in some doubt. It has not frequently arisen, and the authorities are very few. Anal-

ogous questions, however, have arisen quite frequently, and the authorities thereon may be looked to for some light hereon.

It has not infrequently happened that ineligible candidates have been voted for by a majority of the voters. Though the candidate thus voted for by a majority cannot be declared elected because of his ineligibility, and the majority vote is thereby rendered ineffective for such purpose, yet it is quite uniformly held that such majority vote is effective to forbid the election of the candidate having the next highest number of votes. The effect of such majority vote is to render the purported election nugatory, and to leave a vacancy in the office thus attempted to be filled. *State v. Speidel,* 62 Ohio St. 156 (56 N. E. 871) ; *State v. Giles,* 2 Penney (Wis.) 166 (52 Am. Dec. 149) ; *State v. Tierney,* 23 Wis. 430; *Barnum v. Gilman,* 27 Minn. 466 (8 N. W. 375, 38 Am. Rep. 304) ; *Crawford v. Molitor,* 23 Mich. 341; *State v. McGeary,* 69 Vt. 461 (38 Atl. 165, 44 L. R. A. 446) ; *People v. Clute,* 50 N. Y. 451 (10 Am. Rep. 508) ; *State v. Frear,* 144 Wis. 79 (128 N. W. 1068, 140 Am. St. Rep. 992) ; *State v. Bell,* 169 Ind. 61 (82 N. E. 69, 13 L. R. A. (N. S.) 1013, 124 Am. St. Rep. 203).

Some authorities make a distinction as between cases where the ineligibility of the candidate was generally known to the voters at the time of the voting and those cases where such ineligibility was not known. We have no occasion to deal with that distinction in the present case.

In cases where the candidate died upon election day, the authorities also seem to be uniform. If, in such a case, the majority or plurality of the voters vote for the dead candidate, such candidate cannot thereby be deemed elected. But such casting of the majority or plurality vote is nevertheless effective to prevent the election of the candidate having the next highest number of votes. *State v. Speidel,* 62 Ohio St. 156 (56 N. E. 871) ; *Howes v. Perry,* 92 Ky. 260 (17 S. W. 575, 36 Am. St. Rep. 591).

No case is brought to our attention holding otherwise on

this question, and appellant concedes such rule as here stated. The general reason underlying the foregoing decisions is that, though the vote of the majority cannot be given effect to the extent of electing an ineligible or dead candidate, because such election is legally impossible, yet that such majority vote is effective as an expression of the will of the voters, such will being thwarted by the unforeseen contingency, and that it is sufficient to negative a claim of election as against the minority candidate. The rule is a logical and reasonable one, at least where the voters are in ignorance of the disability. Under our present statutes, the voter receives the official printed ballot at the hands of public officials. He has a right to presume that the purported candidates are eligible and living. If the fact be otherwise, it presents a case analogous to fraud, accident, or mistake in civil transactions, and furnishes quite as persuasive a reason why the attempted election of a candidate in such a case should be deemed a nullity. We see no logical reason why the same rule should not be held fairly applicable to such a case as the one before us. It tends to the protection of majority rule, which is one of the fundamentals of our form of government. The appellant relies at this point upon *State v. Frear, supra.* In that case the validity of a nomination at a primary election was involved. The purported candidate, who received a majority of the votes, had died several days before the election was held. The fact of his death was universally known. The statutes of that state provided for the manner of filling the vacancy upon the primary ballot. No attempt was made to comply with these statutes. It was held that, under the provisions of the Wisconsin statutes, the candidate having the next highest number of votes was entitled to the nomination. We think the case is not sufficiently in point as to its decisive features to warrant us in deeming it as an authority to be followed in the case at bar. The conclusion reached therein was based upon the express terms of the Wisconsin statute, and upon the further fact that such

statutes were knowingly ignored by the party officials, and that the votes were cast with knowledge of the voters that the purported candidate was not living. We have no occasion, therefore, to agree or disagree with its reasoning or its conclusions. The closeness of the question presented in that case is indicated by the fact that the decision was by a divided court, four to three. If in the case at bar it appeared that the fact of Shirck's death was generally known to the voters, and especially if it appeared that there had been sufficient time since the death to comply with the statutory provisions as to filling vacancies in such cases, a materially different question might be presented. For our present purposes, we give that phase of the question no consideration, and therefore reach no conclusion thereon.

The conclusion which seems to us the rational one in the case at bar has definite support in *State v. Walsh,* 7 Mo. App. 142; *Howes v. Perry,* 92 Ky. 260 (17 S. W. 575, 36 Am. St. Rep. 591). The following excerpts from *State v. Walsh* will indicate the general nature of the holding:

Yet, unless we depart from the principle upon which the only sound rule rests, we must hold that the ballots upon which was the name of Mr. Miltenberger are properly counted, not for himself, for he was not in existence, but against this opponent, so far as to render a new election necessary. The relator had no plurality of votes. The will of the electors was declared against him. He is not 'the person having the highest number of votes,' to whom the certificate must, under the statute, be given; for these words imply that the successful candidate shall be the choice of the majority of voters who vote. Thus the case contemplated by the statute is not met. Through the death of one of the candidates immediately before the polls are open, an exigency arises not contemplated by the law, and the obvious consequence is a new election. It is not the accidental death of his opponent, but the votes of electors, which should give the certificate to a candidate. If it is true that a majority vote operates only to elect, and, failing of that, goes for nothing, then the most innocent mistake of fact on the part of the majority—as, the

age of a person voted for—might avail to elect a candidate who had received but a few scattering votes. It is said, on the other hand, that, if the American doctrine is correct, votes cast for a fictitious person avail to defeat an eligible candidate; that, if the voters choose to stay away, or, what is the same, throw away their votes, those votes should not be counted as against valid votes. The force of this argument lies in the assumption of an intent to throw away the vote. If the voter can make his vote effective only by voting in a certain way, and if the result of his voting in this way is to secure a new election, at which the majority can elect, how can it be assumed that the voter intended to throw away his vote? If the death of a candidate of a political party takes place, as here, immediately before the election, there is not time for organization or for preparing new ballots. Not only do our laws recognize primary organizations, and minutely describe what ballots shall be legal, but the modes of selecting candidates for political offices are parts of the customs of the country. If the sudden death of a candidate renders the votes of electors ineffective for some purpose, it is not therefore to deprive the voter of his vote. The majority are not obliged to fold their hands, nor are the minority entitled, because of the death, to prevail over the majority. Yet this would be the result if the majority vote is not to be counted against the minority candidate. But the majority of voters, so far from desiring or intending to throw their votes away, wish to use them to their utmost effect; and it is only by a fiction raised, if at all, by the law, that the majority in such cases throw their votes away. This presumption of an intent on the part of the voter that his vote should not, for any purpose, be effectual, any more than if it were blank paper, is, indeed, to a great extent, a fiction of the English courts, and political considerations have probably contributed to produce it.

Without fully committing ourselves to the reasoning above quoted, we are in accord with the conclusion reached, so far as applicable to the fact in the case at bar. The cited case was later followed by the same court in *Sheridan v. St. Louis*, 183 Mo. 25 (81 S. W. 1082, 2 Ann. Cas. 480).

Our citation of the foregoing Missouri cases is made with

the reservation already indicated, viz.: These cases treat the question of knowledge by the voters of the death or ineligibility of the candidate as not material. On this phase of the question we withhold opinion.

What we hold herein is that, where the death of a candidate before the day of election is so recent as to render it practically impossible to properly fill the vacancy, and where a plurality of the votes are cast for the deceased candidate without knowledge on the part of the voters generally that he is deceased, the plurality vote thus cast will be effective to prevent the election of another candidate for the same office having a lesser number of votes. The appellant herein was therefore not entitled to claim election, and his petition was properly dismissed.

Such order of the district court is therefore—*Affirmed.*

LADD, C. J., and WEAVER, GAYNOR, and PRESTON, JJ., concurring.