JOSEPH L. SANDERS *vs.* HERBERT A. RICE, Atty. Gen.

MARCH 1, 1918.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

*(1)  Elections.  Illegal Votes.  Ineligible Candidates.*

Under the provisions of Cons. R. I., Art. XI, § 7 of Amendments, "In elections by the general assembly in grand committee the person receiving a majority of the votes shall be elected," where a majority of the votes were cast for a candidate for office, whom the court subsequently declared to be ineligible for such office, the minority candidate cannot be declared to have been elected, on the ground that the majority of the votes were cast in "wilful defiance of law," where it appears that while the members voting for the ineligible candidate did so vote in disregard of the construction given to the law by the supporters of the minority candidate, which was also the construction placed upon it by the court, they disagreed with such construction and were desirous of casting effective votes, and therefore their votes while inefficient were not illegal and cannot be considered as nullities in a consideration of the total number of votes cast.

MANDAMUS.  Heard on petition for writ and denied.

SWEETLAND, J.  This is a petition for a writ of mandamus which shall command the respondent, the Attorney General of the State of Rhode Island, officially to approve a certain bond presented to him by the petitioner.

The petitioner in substance alleges that he is and on the 18th day of January, 1918, was a resident and a duly qualified elector of the city of Cranston; that on said day at a grand committee of the General Assembly he was elected to the office of Sheriff of Providence County for the term ending February 1, 1920; that in accordance with the

provisions of the statute governing such matters (Chap. 282, Sec. 2, Gen. Laws, 1909) he executed and caused to be executed his bond for $25,000, with sufficient surety in legal form running to the General Treasurer of the State and conditioned upon the true and faithful execution by the petitioner of the duties of said office; that in accordance with the requirements of the statute in that regard he presented said bond to the respondent for his official approval of the form thereof in order that the petitioner might deliver said bond to the General Treasurer and enter upon the duties of the office of Sheriff of Providence County. The petition further sets forth "that said Attorney General has withheld his official approval thereof solely on the pretended ground that your petitioner has not been duly and legally elected to said office for the term aforesaid."

It appears that on said January 18, 1918, there was a vacancy in the office of Sheriff of Providence County for the term ending February 1, 1920, caused by the death of the late Andrew J. Wilcox; that on said day a meeting of the grand committee of the General Assembly was called for the purpose of electing a Sheriff of Providence County to fill said vacancy; that, at the election so held in grand committee, 116 ballots were cast, 37 of said ballots were for the petitioner and 79 ballots were for Jonathan Andrews of Woonsocket. It further appears that on January 17, 1918, the day preceding said election, said Jonathan Andrews was a representative in the General Assembly for the first representative district of Woonsocket; that on said January 17, 1918, said Andrews presented to the House of Representatives his resignation as such representative; that on January 17, 1918, said House of Representatives by vote accepted the resignation of said Andrews and declared vacant the seat of said Andrews as first representative from Woonsocket.

Under the provisions of Article XVI of Amendments to the Constitution of Rhode Island representatives in the General Assembly shall hold their offices until their suc-

cessors are elected and qualified. Chapter 282, Section 1, Gen. Laws, 1909, in part is as follows: "No person shall be eligible to the office of sheriff who shall at the time of his election be a member of the general assembly." In the opinion given in answer to questions pertaining to the legality of the election of Jonathan Andrews as Sheriff of Providence County, this court advised the Governor that in the circumstances set forth above the action of the House of Representatives in accepting the resignation of said Andrews was a nullity; that said Andrews was a member of the General Assembly on January 18, 1918, and his attempted election by said grand committee to the office of Sheriff of Providence County was invalid. (Opinion to the Governor 41 R. I. 79.)

It appears that at said grand committee and before said election, members of the General Assembly who favored the election of the petitioner to said office called the attention of the members of the General Assembly then in grand committee to the facts and to the provisions of the constitution and the statutes which rendered said Andrews ineligible for the office of Sheriff of Providence County. Also at that time, in said grand committee, members of the General Assembly who favored the election of said Andrews gave it as their opinion that under the provisions of the constitution, which make each house of the General Assembly the judge of the election and qualification of its members, it was within the power of the House of Representatives to accept the resignation of said Andrews and to create a vacancy in the office of representative from the first representative district of Woonsocket; and that said Andrews on January 18, 1918, was not a member of the General Assembly.

The provision of our constitution governing elections in grand committee is contained in Section 7 of Article XI of the Amendments to the Constitution, and is as follows: "In elections by the general assembly in grand committee the person receiving a majority of the votes shall be elected."

The petitioner contends before us that after notice given to the members of the grand committee of the disqualification of said Andrews the members who cast their ballots for him did so in wilful defiance of law; that the votes so cast were illegal and should be regarded as though they had been knowingly cast for a fictitious person or for a person known by the electors to be dead; that the language appearing in Section 7 of Article XI of Amendments to the Constitution should be construed to intend, not that a person to be elected in grand committee must receive a majority of the votes cast, but that a person shall be declared elected if he receives a majority of the votes cast for persons eligible for election. The petitioner bases this contention largely upon the authority of certain English election cases and upon certain American cases which in his opinion follow the English doctrine.

Under the so-called English rule, if the candidate at an election who receives the highest number of votes is ineligible, and his disqualification is known to the electors before they vote for him their votes are to be considered as thrown away; and the candidate who receives the next highest number of votes shall be declared elected if he be qualified. *Rex* v. *Parry*, 14 East 549; *Queen* v. *Coaks*, 3 El. & B. 249; *King* v. *Hawkins*, 10 East 211. In Indiana the courts have generally adopted the same rule—*Copeland* v. *State*, 126 Ind. 51; *Gulick* v. *New*, 14 Ind. 93. In *State* v. *Bell*, 82 N. E. 69, however the Indiana Supreme Court appears to imply that, in order to treat a vote given for an ineligible candidate as wasted, the circumstances must be such as to warrant the conclusion that the elector "wilfully and obstinately" cast his vote for such ineligible candidate.

It has generally been held by the courts of this country, and in contested election cases in the United States Senate and House of Representatives, that the spirit of our democratic institutions requires that for a person to be declared elected to public office he must receive a majority of the votes cast in an election for such office, or when the law so

provides, a plurality of such votes. In the few cases in which an eligible candidate who has received less than a majority or a plurality has been held to be entitled to an office, the circumstances have been such as to indicate that the electors in voting for a candidate who was disqualified have deliberately intended to throw away their votes. A case of this nature is that of *State* v. *Frear*, 144 Wis. 79, in which it appears that a large number of votes were cast for a candidate whom the court found the electors knew to be dead at the time of the election. The general rule in Wisconsin in relation to this question is declared in *State* v. *Giles*, 1 Chand. 112, and *State* v. *Smith*, 14 Wis. 497, and is in accord with the American doctrine.

The underlying question involved in the case at bar has been twice passed upon by this court. In an opinion to the Governor, *In re Corliss*, 11 R. I. 638, this court advised that in the case of a candidate for elector of the President and Vice-President of the United States, who was disqualified for that office and who at the election received a plurality of the votes given for that office, the disqualification did not result in the election of the candidate next in vote, but in the failure to elect. In that opinion the court said, "The question submitted to us does not allege or imply that the electors knowing the disqualification voted for the ineligible candidate in wilful defiance of the law." In *Gill* v. *Mayor, Etc. of Pawtucket*, 18 R. I. 281, one of the candidates at an election for a member of the city council of Pawtucket sought to obtain a writ of mandamus to the body charged with the duty of counting the votes given at such election commanding said body to reject certain votes given at said election for another candidate who was disqualified, and to declare the petitioner elected. The court said: "The question now presented is different from that *In re Corliss*, since it is averred in the petition that the electors knew of the fact creating the disqualification. It is not averred, however, that the electors knew that the fact amounted to a disqualification in point of law, or that,

knowing the disqualification, they voted for the candidate in defiance of law. Without one or the other of these averments, it is clear, under the cases cited in *In re Corliss*, 11 R. I. 638, that the votes could not be rejected and the petitioner held entitled to the office.     Whether if such facts were averred, that result could be accomplished, is a question not now before us." The petitioner urges that the case at bar is distinguishable in its facts from these two Rhode Island cases and that they support his contention here; because in this case the members of the grand committee who voted for said Andrews well knew the fact which caused his disqualification; and before giving in their votes it was specifically pointed out to them that this fact amounted to a disqualification in point of law. The petitioner then argues that the controlling circumstances which did not appear in the *Corliss* matter and in *Gill* v. *Mayor* are present here; that being informed of the fact of his disqualification and being notified of the legal effect of that fact, when in disregard of such information and notice, members voted for said Andrews, they acted in "wilful defiance of law." This is not a fair and reasonable conclusion from the circumstances in the case; it is not a proper application of either of the Rhode Island cases referred to; and it is not in accordance with the great weight of American authority. This court used the expressions "defiance of law" and "wilful defiance of law" exactly. It used them as such expressions are employed in the authorities, having reference to conduct on the part of a voter from which a court can fairly infer that he intended to throw his vote away. It is true that the members voting for said Andrews did so vote in disregard of the construction given to the law by the supporters of the petitioner, which is also the construction afterwards placed upon it by this court. If it also appeared that the members so voting admitted the correctness of this construction and then recklessly and contemptuously refused to be governed by such construction and acted in disregard of it there would be furnished a basis for the petitioner's claim

of a "wilful defiance of law," of an intention on the part of such members to waste their votes; and there would be some force in the petitioner's claim that such votes should be entirely disregarded in a consideration of the number of votes cast at said election. It is plain, however, that such was not the attitude of those who voted for Mr. Andrews. It is by no means an unusual situation that members of legislative bodies lack confidence in the assertions of their political opponents, and in perfect good faith differ from them both as to statements of fact and in regard to the interpretation of law. It is apparent that these members desired to cast effective votes; that they believed in the legal soundness of their expressed opinion as to the eligibility of Mr. Andrews; and, having a majority of the votes in grand committee it is quite unlikely that they deliberately intended to permit the minority to fill the very important office of sheriff of Providence County. In our opinion it would be an entire disregard of the facts to hold that the votes given for Mr. Andrews were cast in wilful defiance of law.

The people of this State have provided in their constitution that for the election of a person to office by the General Assembly in grand committee it is requisite that such person should receive a majority of the votes. The circumstances must be very extraordinary which would warrant a finding that a person has been elected to office in the grand committee, in accordance with this provision of the constitution, who has received but thirty-seven out of a total of one hundred and sixteen votes cast. We are not unmindful of the petitioner's contention that the votes cast for said Andrews were illegal votes and should be entirely disregarded; and that as the petitioner received all of the legal votes cast he has received the "majority of the votes" requisite under the constitution. This contention is unsound. The votes cast for said Andrews, although they were inefficient votes for the purpose of his election, are not "illegal votes," as that expression is used in cases like the

present. The votes cast for him were given in by persons legally entitled to vote at the election; they express in a perfectly legal way the will of the voter. They must be considered in this sense as legal votes cast for sheriff, although the person named upon the ballot was ineligible to be elected to that office. These votes must surely be considered as votes cast in opposition to the candidacy of the petitioner. That such votes should not be regarded as nullities, in a consideration of the total number of votes cast, is in accordance with many decisions dealing with the subject in American courts. In *Saunders* v. *Haynes*, 13 Cal. 145, the court said: "The votes are not less legal votes because given to a person in whose behalf they cannot be counted." This principle was reaffirmed in *Crawford* v. *Dunbar*, 52 Cal. 36. In *Commonwealth* v. *Cluley*, 56 Pa. St. 270, the court said, "The votes cast at an election for a person who is disqualified from holding office are not nullities." To the same effect are the cases of *Crawford* v. *Molitor*, 23 Mich. 341; *Barnum* v. *Gilman*, 27 Minn. 466; *Swepston* v. *Barton*, 39 Ark. 549; *Gardner* v. *Burke*, 61 Neb. 534; *People* v. *Clute*, 50 N. Y. 451. The petitioner has called to our attention cases which hold that a vote is illegal and must be considered as a nullity in a count of the total number of votes cast when the ballot is void because it fails to conform to the requirements of law. There is however a manifest distinction between a vote which is illegal, because not cast by a qualified elector or because it is not in accordance with a statute regulating the exercise of the elective franchise, and a vote legal in form cast by a legal voter but for a person who is not eligible.

In our opinion the petitioner is not entitled to the writ of mandamus for the reason that he clearly was not elected to the office of Sheriff of Providence County as by him alleged.

The hearing on this petition was had immediately before the holding of another grand committee called to fill said vacancy, after the failure to elect in the grand committee

of January 18, 1918.   We believed that the public interests required that the cause should be determined at that time before an extended opinion could be prepared; and after full consideration of the matter we denied the petition in a rescript.   Because of the nature of the questions here we have considered it desirable that the reasons for our determination should be more fully stated in this opinion supplementing said rescript.

*Patrick P. Curran, Joseph C. Cawley,* for petitioner.
*Herbert A. Rice, Attorney General,* for respondent.