# Booher v. Smith.

(Decided October 4, 1929.)

E. BERTRAM for appellant.

DUNCAN & BELL for appellee.

OPINION OF THE COURT BY COMMISSIONER TINSLEY—
Reversing.

Appellant and contestant W. L. Booher, appellee and contestee Perry Smith, and J. G. Huff were candidates for the Republican nomination for judge of the Clinton county court in the general primary election held August 3d of the present year. Upon a tabulation of the votes by the election commissioners of Clinton county, it was found that appellee Smith had received 852 votes, appellant Booher had received 786 votes, and Huff had received 721 votes. The certificate of nomination was awarded to appellee. Whereupon appellant instituted this contest against both appellee and Huff, setting up as grounds therefor: (1) That in each of the 15 voting precints of Clinton county there were from 3 to 5 votes certified by the election officers and counted for each of the contestees, more than was actually cast for them, and that in each of said precincts there were from 3 to 5 votes certified for him less than he actually received; that a correct tabulation of the votes cast in each and all of the precincts would show that contestant received as many as 840 votes, and that contestee received not more than 800 votes, and that Huff received not more than 675 votes; (2) that more than 100 named persons who were

not legal voters in the several precincts, because they were either nonresidents of the county, or under 21 years of age, or were Democrats, voted for appellee Smith, and that a large number of other persons who were not blind or so disabled as to be unable to mark their ballots, voted openly on the table for him; (3) that contestee Smith and Huff conspired with other persons to pool, and did pool, their money for the purpose of bribing voters in the election; that Smith and Huff each violated the Corrupt Practices Act (Ky. Stats., sec. 1565b-1 et seq.), in that they each used large sums of money to buy and bribe voters to vote for them, and that each of them procured a number of persons to work for them and gave to such persons money with which to buy votes and bribe voters, and that such persons did with the knowledge of contestee Smith and Huff buy and bribe a large number of voters to vote for them in the primary election. Contestee filed a response in which, after traversing the grounds of contest, he alleged that he received more votes than were counted for him, and asked that the ballot boxes be opened and the votes recounted. Huff filed no response; at least, none is in the record before us. The issues having been completed, the trial was had and the evidence heard orally before the court. The ballots were recounted, and it was found by the court that contestee Smith had received 850 votes, contestant Booher had received 790 votes, and Huff had received 719 votes, and contestee Smith was adjudged to be the nominee and entitled to the certificate of nomination. There was no testimony whatever tending to show that any votes were cast by nonresidents, Democrats, persons under 21 years of age, or that there was any open voting. The testimony heard was directed solely to the charge of violation of the Corrupt Practices Act.

Stanley McWhorter testified that on Friday before the election he had a conversation with appellee Smith, in which he asked Smith if he could get from him any money to work in the election; that Smith said to him that if he had been a little sooner it would have been all right, but that he already had a man in McWhorter's precinct (called Netherly precinct), and for McWhorter to see this man on election day; that witness asked who the man was, and contestee answered, "Bill Morrison;" that he saw Morrison at Netherley precinct on election day, and Morrison gave him $6 to get six votes for Smith, and

that he got his wife, his brother, a brother-in-law, and his father, paid them each, except his wife, a dollar, but kept the dollar intended for his wife; that shortly before he saw Morrison on election day contestee Smith came to Netherly precinct and asked witness if Morrison was there, and being answered in the negative, Smith said to the witness to find Morrison and to "tell him to get on the ground and put some money up."

Virgil Starnes testified that he saw contestee Smith and the witness Stanley McWhorter in convercation at Netherly precinct on election day and heard them talking about Bill Morrison, and later on he saw Bill Morrison there; Morrison asked him to vote for contestee and Bill Cummins, and gave him $2; that he saw Morrison talking with a number of other persons during the day; heard him ask witness' brother, George, to vote for contestee and Bill Cummins, and saw him give George a dollar; and that Morrison had "a right smart roll" of money.

John Cooksey testified that Morrison gave him $2 and said "elect Smith and Cummins." George Starnes testified that on the day before election he had a conversation with appellee Smith, in which he asked Smith if he was putting out any money, and that Smith said he "had done give all out and didn't have any more," but that he had Bill Morrison in witness' precinct and for witness to see Morrison; that he saw Morrison election day; Morrison gave him a dollar and told him to vote for Smith and Cummins; and that he saw Morrison give a dollar each to two others.

Marshall Starnes testified he saw contestee at Netherly precinct on election day and asked him "if there was anything out;" that contestee told him to see Bill Morrison; that he saw Bill Morrison, and the latter offered him $2; but that he did not take the money because he (witness) was for contestant Booher.

Sarah Netherly testified that while at the polls at Netherly precinct she received information from her daughter that Bill Morrison wanted to see her; she went to Morrison, and he gave her $2, and said "he wanted Smith and somebody else elected."

Johnny Burchett testified that contestee Smith, on Friday before the election, at a political meeting at Albany, gave him a dollar and asked him to vote for him. William Guffy testified that Jim Smith, a son of con-

testee, offered him $1 to vote for contestee, but he declined to take the money or vote for contestee.

Rosier Rains testified that after he had voted and come out of the voting booth Jim Smith, son of contestee, asked him for whom he had voted, and when he answered for Smith, that Jim handed him a dollar, which he put in his pocket and went on home.

Contestee denied having any conversation with Virgil McWhorter or George Starnes, or that he told either of them to see Bill Morrison, and denied that he gave Morrison any money to spend or made any arrangements with Morrison to spend any money; denied that he gave Johnnie Burchett a dollar or asked him to vote for him, and denied that he had any arrangement with his son Jim to spend any money, and denied that he had any knowledge of any money being spent for him by his son Jim or Bill Morrison, or any other person.

Jim Smith admitted giving a dollar to Rosier Rains, but said Rains asked him for it as a loan. He denied he offered Guffy a dollar to vote for his father. On his examination in chief, William Morrison denied that Perry Smith, or any one for him, gave or furnished Morrison any money for use in the election; denied that he used any money in the election; denied that he bought or paid any person to vote for Smith. On cross-examination, however, he admitted that he had some money at the election in Netherly precinct and let some people there have some money, but he could not remember all of them, but did remember letting George Starnes and Virgil Starnes have money, but could not remember how much.

The above recital of the testimony shows there is considerable evidence, of a positive character, of the illegal use of money in behalf of contestee, and that he had knowledge of it. Section 1565b-3, Kentucky Statutes, provides that it shall be unlawful for any person who is a candidate for nomination or election for any state, city, town, municipal, or district office to expend, pay, promise, loan, or become pecuniarily liable in any way for money, or other thing of value, either directly or indirectly, to induce one to support him; and section 1565b-11, Kentucky Statutes, provides: "In any contest over the nomination or election of any officer mentioned in this act, it may be alleged in the pleadings that the provisions of this act have been violated by the candidate or

by others in his behalf with his knowledge, and if it so appears upon the trial of said contest, then said nomination or election shall be declared void, and it is hereby provided that the candidate who has received the next highest number of votes and who has not violated the provisions of this act shall be declared nominated or elected unless it also appears that one of the parties to the contest received a plurality of the votes cast and did not violate the provisions of this act.''

In so far as that section declares that one receiving less than a plurality of votes may be declared elected as applied to general elections, it has been held unconstitutional (McKinney v. Barker, 180 Ky. 526, 203 S. W. 303, L. R. A. 1918E, 581); but as applied to primary elections, it has been upheld, since a primary is not an election within the meaning of the Constitution (Mellon v. Goble, etc., 210 Ky. 711, 276 S. W. 830).

In Hibbard v. Page (Ky.) 20 S. W. (2d) 1707, decided October 1, 1929, the court said: ''When there is proof that the provisions of the Act (section 1565b-11, supra) have been violated the court should not lightly ignore the proof upon the evidence of those who are charged with having violated the law. The evidence in this case is sufficient, in our judgment, to show that the law was violated by appellee, and by others working for him with his knowledge. The duty of the court, therefore is clear. He should be denied the fruits of his victory thus obtained.''

In this case the proof of the illegal use of money in behalf of appellee, and with his knowledge thereof, is too strong to be ignored, even though denied by him and those charged with using it in his behalf. The duty of the court in this case is as clear as it was in the Hibbard-Page case, supra—appellee must be denied the fruits obtained by such means.

No claim is made that appellant violated the law. Testimony in his behalf is that he did not violate it. He was therefore entitled to be declared Republican nominee for judge of the Clinton county court.

Wherefore the judgment is reversed and cause remanded for proceedings consistent herewith.