G. SCOTT DAVIES, Appellant, v. GEORGE A. WILSON et al., Appellees.

No. 45404.

OCTOBER 15, 1940.

C. A. Robbins and Seth S. Silvers, for appellant.

J. R. McManus, for appellee Swan.

John M. Rankin, Attorney General, J. C. Eichhorn, and Floyd Philbrick, Assistant Attorneys General, for all other appellees.

BLISS, J.—At the primary election held on June 3, 1940, the date specified in the statute, the appellant and Fred D. Everett were the only candidates whose names were printed on the ballot, for the Republican nomination for attorney general. As shown by the count of the election officials, after the closing of the polls, and by the later canvass of the state board of canvassers, there were 241,367 ballots cast at said election for the Republican candidates for that office. Of this total Everett received 142,911 votes, and the appellant received 98,453 votes, and three votes were written in for others. Mr. Everett died on June 10, 1940, before the canvass of the election returns certified to the secretary of the state. The chief contention urged by appellant as a ground for reversal is, in substance, that, by reason of his death, Everett ceased to be a living candidate, as effectively as though he had withdrawn from the contest while alive, and that the primary law does not contemplate the nomination of a person who dies prior to the time the nomination is made complete by the canvass of the returns and the issuance of the certificate of nomination by the board of canvassers. He further urges upon us that, since he received the highest vote of any candidate living after the death of Mr. Everett, he was entitled to the certificate of nomination. The claim or contention of the appellant is wholly untenable and without the slightest foundation in reason or law. No process of sound reasoning, or even mental legerdemain, can make the 98,453 votes received by the appellant more than the 142,911 votes received by Fred Everett. Not merely a plurality, but a majority, of all of the votes cast at the primary were cast against the appellant. The statutory provisions relative to nominations by primary election are found in chapter 36 of the 1939 Code of Iowa. Section 527 thereof defines such an election as follows:

"The term 'primary election' as used in this chapter shall be construed to apply to an *election* by the members of various political parties: 1. *For the purpose of placing in nomination* candidates for public office. * * *" (Italics ours.)

Section 529 provides:

"Candidates　*　*　*　*　*　*　*　*　*　shall be nominated at a primary election　*　*　*." (Italics ours.)

Sections 573 and 574 provide that upon the closing of the polls the judges and clerks shall separately count the ballots of each political party, certify to the number of votes cast upon the ticket of each political party for each candidate for each office, seal the ballots of each party in separate envelopes and write on the outside of the envelope the names of the candidates for all the offices and opposite each name enter the number of votes cast for such candidate. Within 24 hours after the closing of the polls the certificates, envelopes, ballots, etc., shall be delivered to the county auditor. Section 577 provides that on the second Tuesday following the primary election the board of supervisors shall canvass the returns certified to the auditor from each voting precinct, and make abstracts thereof stating the number of ballots cast in the county by each political party, separately, for each office, and the name of each person voted for and the number of votes received by each for each office. These abstracts with respect to state offices shall be certified to the secretary of state (section 588). Section 591 provides that on the second Monday after the primary election, the executive council shall meet as a canvassing board and canvass the abstract returns received from each county, and shall make an abstract of its canvass, stating the number of ballots cast by each political party, separately, for each office designated in the abstracts, the names of all persons voted for and the number of votes received by each person for each office and shall sign and certify thereto. Certified lists of the nominees shall be sent to the respective party chairman of each state central committee. Section 593 provides:

"Who nominated. The candidate of each political party for each office　*　*　*　having received the highest number of votes in the state　*　*　*　provided he received not less than thirty-five percent of all of the votes cast by the party for such office, shall be duly　*　*　*　nominated as the candidate of his party for such office,　*　*　*." (Italics ours.)

Section 604 provides:

"Vacancies in *nominations made in the primary election* when such vacancies occur before the holding of the * * * state convention shall be filled: * * * By the state convention if the office * * * is to be filled by the voters of the entire state." (Italics ours.)

When the state canvassing board met on June 17, 1940, the appellant appeared before it, and, it being conceded by the members of the board that Mr. Everett had died on June 10, 1940, he demanded that the board certify him as the nominee of the Republican party for the office of attorney general of the state. The board refused the demand and on June 20, 1940, executed its certificate "that at the Primary Election held on the third day of June, A. D. 1940, there were two hundred forty-one thousand three hundred sixty-seven, (241,367) ballots cast for the Republican candidate for the office of Attorney General of which Fred D. Everett received 142,911 votes. G. Scott Davies received 98,453 votes. Scattered 3 votes. We therefore declare Fred D. Everett duly nominated * * *." The defendant Swan was notified of the death of Everett and of the time thereof, prior to the Republican state convention.

On July 5, 1940, plaintiff filed his petition, and on July 10, 1940, answers were filed for all defendants. There was no dispute as to the facts. Motion for plaintiff for judgment on the pleadings was denied, and on July 11, 1940, decree and judgment dismissing plaintiff's petition was rendered. The Republican state convention met on July 12, 1940, and nominated a candidate of the party for the office of attorney general.

 The purpose of a primary election is to permit the electors affiliated with the respective political parties to say by their votes who shall be the candidates of their parties for the various offices. In other words, the electors do the nominating. This is clearly manifest from the statutory provisions above set out, particularly sections 527 and 529, the latter section providing that "candidates shall be nominated at a primary election * * *." The determinative factor in an election for public office, whether it be a primary or a general election,

is the vote of the electors. It is true that the canvass by the state board of canvassers of the abstracts of the election returns filed by the county auditors is one of the statutory steps in an election for public office, but it cannot ordinarily alter the record made by the voters. Its duty is the ministerial or administrative one of ascertaining and verifying that record and declaring the result as it was shown upon the face of the abstracted returns. State ex rel. Rice v. County Judge, 7 Iowa 186, 198; Jones v. Fisher, 156 Iowa 582, 586, 137 N. W. 940, 941; 9 C. J., page 1275; 20 C. J. 199, section 251. In 20 C. J. 200, section 255, it is stated:

"Where there is no question as to the genuineness of the returns or that all of the returns are before them, the powers and duties of canvassers are limited to the mechanical or mathematical function of ascertaining and declaring the apparent result of the election by adding or compiling the votes cast for each candidate as shown on the face of the returns before them, and then declaring or certifying the result so ascertained."

Many cases are cited in support of the text: Wells v. Robertson, 277 Ill. 534, 539, 115 N. E. 654, 656; Campbell v. Hunt, 18 Ariz. 442, 452, 162 P. 882, 886; Lansdon v. State Board of Canvassers, 18 Ida. 596, 602, 111 P. 133, 134; State ex rel. Fletcher v. Osburn, 24 Nev. 187, 51 P. 837; McCrary on Elections (3d Ed.), section 226, and many other authorities announce this rule.

The fact that Mr. Everett died after the primary and prior to the statutory date for canvassing the votes did not nullify the record made by the electors, who cast their ballots for him, nor disfranchise these voters in this election. Neither did it abrogate the statutory mandate that the board should canvass the returns and certify the record. It had no other alternative than to certify, as the nominee, the person who received the highest number of votes at the election.

Appellant urges that the board had no right or power to certify that the voters had nominated a man who had died a week after the date of election, but prior to the canvass. He cites no authorities and advances no sound reason which even tend to support this contention. If it were true it would not

make a case for him. He must win on the strength of his own position. He must establish that he was nominated on election day and was therefore entitled to the certificate. That is the only issue in the case. Section 593 designates who is nominated. It is the candidate, "having received the highest number of votes * * * provided he received not less than thirty-five percent of all the votes cast by the party for such office, [who] shall be duly and legally nominated * * *." Appellant states that he received more than 35 percent of the votes cast. This is true, but that is the lesser of the two essentials. He must also have received the "highest number of votes" cast. He failed in this, and because of this failure he was not nominated.

■ The decisions which he cites in support of his contentions are in no wise applicable. In Bowring v. Dominguez, 3 Cal. 2d 167, 44 P. 2d 299, there were three candidates and two to be nominated. The candidate who received the highest number of votes was ineligible to hold the office and was therefore disqualified. The relator received the third highest vote. He was awarded the nomination only because the charter of the city provided that, in case a candidate was ineligible, for any reason, the candidate receiving the next highest vote succeeded to his position. We have no such statute in Iowa. Appellant cites Booher v. Smith, 230 Ky. 643, 20 S. W. 2d 477. The plaintiff contestant and the defendant Smith and one Huff were candidates at a primary for nomination as judge. Booher received 790 votes, Smith, 850 and Huff, 719 votes. Smith was disqualified because he violated the Corrupt Practices Act. This gave the nomination to the plaintiff as the second high man because the act so provided. The case has no application. Appellant also cites Blaine v. Board of Supervisors, 1 Cal. 2d 486, 35 P. 2d 517, Madden v. Board of Election Comr's., 251 Mass. 95, 146 N. E. 280, and State ex rel. Bancroft v. Frear, 144 Wis. 79, 128 N. W. 1068, 140 Am. St. Rep. 992. In the first case, there were three candidates for police judge. One of them was murdered 13 days before the primary, and, notwithstanding wide publicity was given to the fact, he received 9,759 votes, or sufficient to prevent either of the others from receiving the required majority. In the second case,

Madden, the petitioner, and Ward and Canty were candidates for two positions as representatives. Canty died early in the morning of the day before the primary. In spite of publicity which made his death known to everyone who came to the polls, Ward received 5,317 votes, Canty, 2,942, and Madden received 1,165 votes. In the Wisconsin case, the relator, Tucker, and Gunderson were candidates for attorney general at the primary election on September 6th. On September 1st, Tucker died. His death was made known generally to the voters over the state. Those backing him urged his faction to vote for him in spite of his death upon the theory that no one would have a majority, and the state central committee would name the nominee. Tucker, Gunderson and the relator received respectively 63,482, 58,196 and 47,187 votes. In each of these three cases the second high man was declared nominated, but solely for the reason that those voting for the dead men, in very large part, did so knowing that death had made them ineligible, and they had knowingly cast their votes notwithstanding that fact, and in effect threw them away. These decisions can have no application to the case before us. However, in the Wisconsin case, the court held that where the death of a candidate occurred so shortly before the election that it was generally unknown to the voters, the votes cast for the dead man were not invalid, and the candidate having the next highest vote would not be entitled to the nomination. Such is the holding in this state. In Patten v. Haselton, 164 Iowa 645, 146 N. W. 477, 51 L. R. A., N. S., 226, the plaintiff was the Republican nominee and Shirck was the Democrat nominee. Shirck died at 8:30 o'clock the night before election. Few knew of his death. Shirck received 1,800 votes and plaintiff received 1,100 votes. The court held that while the votes for Shirck could not be counted for him, they should be counted against the plaintiff, thus leaving the election nugatory, and a vacancy in the office, attempted to be filled. Justice Evans uses language which is of significance in the case before us. He stated: "It is not the accidental death of his opponent, but the votes of electors, which should give the certificate to a candidate." Authorities are overwhelming in holding that where the voters have no knowledge of the facts or law which

render ineligible the candidate at a primary or general election, who receives a majority, or required plurality vote, his disqualification does not entitle the candidate receiving the next highest vote to the nomination or election. Justice Evans, in the case just referred to, states this rule and cites a number of authorities. Other or later decisions supporting this rule are Saunders v. Haynes, 13 Cal. 145; Heney v. Jordan, 179 Cal. 24, 175 P. 402; In re Corliss, 11 R. I. 638, 23 Am. Rep. 538; Dupre v. St. Jacques, 51 R. I. 189, 190, 153 A. 240; Derringe v. Donovan, 308 Pa. St. 469, 162 A. 439; State ex rel. Robinson v. Jones, 194 Ark. 445, 108 S. W. 2d 901; Bohlinger v. Christian, 189 Ark. 839, 75 S. W. 2d 230; State ex rel. McKittrick v. Cameron, 342 Mo. 830, 117 S. W. 2d 1078; State ex rel. McKeever v. Cameron, 179 Wis. 405, 192 N. W. 374; State ex rel. Haff v. Pask, 126 Ohio St. 633, 186 N. E. 809; Sublett v. Bedwell, 47 Miss. 266, 12 Am. Rep. 338; Lamoreaux v. Ellis, 89 Mich. 146, 50 N. W. 812; Hoy v. State ex rel. Buchanan, 168 Ind. 506, 81 N. E. 509, 11 Ann. Cas. 944; Heald v. Payson, 110 Me. 204, 85 A. 576; State ex rel. Spruill v. Bateman, 162 N. C. 588, 77 S. E. 768, Ann. Cas. 1915B, 515; Gardner v. Burke, 61 Neb. 534, 85 N W. 541; Woll v. Jensen, 36 N. D. 250, 162 N. W. 403, Ann. Cas. 1918B, 982. The question involved in these cases is not before us, and we do not commit ourselves upon it, but we refer to them and to the principle stated therein, simply to show that the rule, contended for by the appellant, that the candidate with the second highest vote should receive the nomination or election, is contrary to the great weight of authority, even when the disqualified candidate was ineligible both on and prior to the election. With how much greater reason must it be said that the rule contended for by appellant has no application, when, as in this case, the candidate, Mr. Everett, was on and after election day legally qualified to be nominated and to hold the office. In State ex rel. Sheets v. Speidel, 62 Ohio St. 156, 56 N. E. 871, the candidate died at an hour and 45 minutes before the polls closed; in Howes v. Perry, 92 Ky. 260, 17 S. W. 175, 13 Ky. L. Rep. 483, 36 Am. St. Rep. 591, the candidate died at 3 :00 o'clock in the afternoon of election day; and in Patten v. Haselton, supra, (164 Iowa 645, 146 N. W. 477, 51 L. R. A., N. S., 226) the can-

didate died the night before the election. In each case the dead candidate received the highest vote, and in each case the candidate next highest was denied the office.

■ If those cases were rightly decided, and we think they were, on what authority or for what sound reason can it be said, in this case, where Mr. Everett was alive and in no way disqualified on election day, and did not die until a week later, that we should hold that the appellant, who received neither a majority nor a plurality of the votes cast for the office, is entitled to the nomination? There is neither reason, principle nor precedent for so holding. Any such decision would be contrary to the fundamental principle underlying our form of government, which is that no candidate for nomination or election to an elective office shall be entitled to it unless the record of the valid votes cast shows him to have received either a majority, or the required plurality thereof. The judgment and decree of the trial court is—Affirmed.

CHIEF JUSTICE and all JUSTICES concur.