K. B. WELTY and Edward W. Dailey, Petitioners,

v.

Richard M. McMAHON, T. M. Whicher, and Hon. R. K. Richardson, Clerk of Supreme Court, Respondents.

No. 67127.

Supreme Court of Iowa.

March 2, 1982.

Earl H. Maahs, Spirit Lake, for petitioner Welty.

David A. Hirsch, Burlington, for petitioner Dailey.

Roger A. Lathrop and Craig A. Levien, Davenport, for respondent McMahon.

A. J. Stoik of Klass, Whicher & Mishne, Sioux City, for respondent Whicher.

Mark E. Schantz, State Sol. Gen., for respondent Richardson.

McGIVERIN, Justice.

We accepted original jurisdiction of this case under our supervisory power for review and declaratory judgment in order to determine the legality of the re-election of respondents Richard M. McMahon and T. M.

Whicher to the State Judicial Nominating Commission, pursuant to chapter 46, The Code, and their subsequent certification of election by respondent R. K. Richardson, clerk of this court. We hold that McMahon and Whicher are ineligible for such re-election and that a new State Judicial Nominating Commission election must be held in their respective districts.

The State Judicial Nominating Commission nominates persons for appointment to this court and the court of appeals. §§ 46.12–.15.

The genesis of this case was the January 1976 election of McMahon and Whicher as State Judicial Nominating Commissioners for the First and Sixth Congressional election districts, respectively, pursuant to section 46.2, The Code. The terms of the previous commissioners had expired as of July 1, 1975. However, the election that should have been conducted in January 1975 pursuant to Chapter 46 to replace them was not held until January 1976.

McMahon and Whicher served as commissioners from the January 1976 election until July 1, 1981. At the January 1981 election for the terms ending in June, they each received the most votes in their respective districts. § 46.9. Petitioners Edward W. Dailey and K. B. Welty received the second highest vote tally in the first and sixth districts, respectively. Neither McMahon and Whicher nor petitioners had their names printed on the ballots. § 46.10. Their votes were "write-ins."

A question arose as to whether McMahon and Whicher were eligible to continue serving as commissioners under Iowa Const. Art. V, § 16 (amendment of 1962), which provides, in pertinent part: "Appointive and elective members of Judicial Nominating Commissions shall serve for six year terms [and] shall be ineligible for a second six year term on the same commission . . . ."

On February 19, 1981, respondent R. K. Richardson, clerk of this court, requested an opinion from the Office of the Attorney General on the matter:

The question is therefore whether Chapter 46, The Code, requires the clerk to determine the eligibility of candidates placed on the ballot and/or the eligibility of those candidates receiving the most votes who are to be certified as elected. Secondly, if the clerk is to determine qualifications, are the two present commissioners eligible for a second six-year term? If the two commissioners are not eligible, should the two candidates receiving the next highest number of votes be certified as elected?

The Attorney General responded on May 27, stating: 1) "it is the opinion of this office that the clerk of the supreme court does not possess the statutory authority, either expressed or implied, to determine the eligibility of candidates for or of persons newly-elected to the post of judicial nominating commissioner either on his or her own motion or upon challenge by another party"; 2) "it does not appear that Article V, § 16 of the Iowa Constitution would allow a person *elected* to a six-year term to serve a second six-year term when that person, due to a technical delay in holding the election, actually only served on the Commission for five and one-half years"; and 3) the candidates receiving the second highest vote totals become the electors with the most votes, due to the ineligibility of respondents, and "should be deemed elected by virtue of § 46.9 and qualified to serve pursuant to § 63.4, The Code."

On May 29, respondent Richardson, on the advice of the Attorney General that he had no discretion concerning candidate eligibility, certified that McMahon and Whicher had been elected as State Judicial Nominating Commissioners for their respective districts in the January 1981 election. § 46.11. On August 5, petitioners filed a petition for supervisory review and for declaratory judgment, requesting that McMahon and Whicher be declared ineligible to serve as commissioners and that the clerk be directed to certify Dailey and Welty as commissioners for their respective districts. On November 25, we accepted jurisdiction of the petition.

▇ I. *Our jurisdiction.* Our jurisdictional decision was premised upon Iowa

Const. Art. V, § 4 (amendment of 1962), which provides:

The Supreme Court shall have appellate jurisdiction only in cases of chancery, and shall constitute a Court for the correction of errors at law, under such restrictions as the General Assembly may, by law, prescribe; and shall have power to issue all writs and process necessary to secure justice to parties, and shall exercise a supervisory and administrative control over all inferior Judicial tribunals throughout the State.

We have used our supervisory jurisdiction in the past to review the actions of bodies other than judicial tribunals when the actions concerned the composition of a judicial tribunal. See Redmond v. Carter, 247 N.W.2d 268, 269 (Iowa 1976) (concerning whether district court judges are eligible for appointment to the Iowa Court of Appeals); Warren County v. Judges of the Fifth Judicial District, 243 N.W.2d 894, 896–97 (Iowa 1976) (review of action of judges of a judicial district in substituting a full-time magistrate for incumbent part-time magistrates). We have said of our supervisory powers:

The superintending control is hampered by no specific rules or means for its exercise. It is so general and comprehensive that its complete and full extent and use have practically hitherto not been fully and completely known and exemplified. It is unlimited, being bounded only by the exigencies which call for its exercise. As new instances of these occur it will be found able to cope with them.

Warren County, 243 N.W.2d at 897; Hutchins v. City of Des Moines, 176 Iowa 189, 213, 157 N.W. 881, 889 (1916).

Although we believe our administrative and supervisory powers should be used sparingly in accepting original jurisdiction over an action involving the eventual composition of a judicial tribunal, we conclude the present case, which also involves the clerk of this court and his certification of the election of commission members, is a proper one for exercise of those powers. Thus, we took jurisdiction over this matter. Prompt resolution of the question is in the public interest.

**II.** *Eligibility for re-election.* The next issue we must resolve is whether respondents McMahon and Whicher were eligible for re-election as State Judicial Nominating Commissioners.[1] We conclude that they were not.

Our determination of this issue of first impression hinges upon our construction of Iowa Const. Art. V, § 16. "In construing a constitution, our purpose is to ascertain the intent of the framers." Redmond v. Ray, 268 N.W.2d 849, 853 (Iowa 1978). We believe that the framers intended Art. V, § 16 to limit a State Judicial Nominating Commissioner to a single six-year term.

McMahon and Whicher contend that they did not serve a "term" from January 1976 to July 1981 but that they merely filled out vacancies created by the delay in holding the election that should have been conducted in January 1975. See Ervin v. Collins, 85 So.2d 852, 857–58 (Fla.1956) (death of incumbent caused vacancy in office of governor; successor elected to serve remainder of term not precluded from re-election by constitutional provision prohibiting successive terms of office to same person).[2] This contention is without merit because no vacancy ever existed. Section 69.2, The Code, provides, in pertinent part:

Every civil office shall be vacant upon the happening of either of the following events: 1. A failure to elect at the proper election, or to appoint within the time fixed by law, unless the incumbent holds over.... 4. The resignation or death of the incumbent, or of the officer-elect before qualifying.

Section 69.1 provides in part: "every officer elected or appointed for a fixed term shall

---

1. We assume that respondents' initial election in 1976 was valid although untimely. See Westphal v. City of Council Bluffs, 275 N.W.2d 439, 444 (Iowa 1979).

2. For a general discussion on the effect of constitutional and statutory provisions disqualifying persons for public office because of previous tenure of office, see Annot., 59 A.L.R.2d 716 (1958).

hold office until his successor is elected and qualified, unless he resigns, or is removed or suspended, as provided by law." There is no evidence that the predecessors of McMahon and Whicher died, resigned, or were removed or suspended. Accordingly, we find that McMahon and Whicher's predecessors held over and no vacancies existed in their offices. The predecessors served until McMahon and Whicher were elected and certified.

We considered the effect of the incumbent's holdover on the service of the successor officer in *Wilson v. Shaw*, 194 Iowa 28, 36, 188 N.W. 940, 943 (1922):

> The time which a person holds over beyond his term of office is so much of an encroachment on the term of his successor. The word *term* in a legal sense means the fixed and definite period of time which the law describes that an officer may hold office, and a holder over does not change the length of a term but results in shortening the period served by his successor.

(Citations omitted) (emphasis in original). *See Sueppel v. City Council of Iowa City*, 257 Iowa 1350, 1357, 136 N.W.2d 523, 527 (1965). Thus, there is a difference between "tenure" and "term." What is affected by the holdover of an incumbent is the tenure of the successor, not the term of office. In other words, term and tenure need not be the same period of time. An officer may serve a shortened tenure, but nonetheless be deemed to have served a complete term. *Accord, Cawood v. Hensley*, 247 S.W.2d 27, 30 (Ky.1952); *Selway v. Schultz*, 268

N.W.2d 149, 151 (S.D.1978); *Spears v. Davis*, 398 S.W.2d 921, 926 (Tex.1966); *State ex rel. Rushford v. Meador*, 267 S.E.2d 169, 170–71 (W.Va.1980).

We hold that since McMahon and Whicher have served a complete six-year term despite their late start in office and shortened tenure, they are precluded from re-election by Iowa Const. Art. V., § 16.

III. *Remedy.* Because McMahon and Whicher are ineligible for second terms as State Judicial Nominating Commissioners, we must fashion an appropriate remedy for their erroneous certification by the clerk. Petitioners contend that they should be certified as the new commissioners. However, we conclude that a new election must be held in the first and sixth election districts.

The essence of this issue concerns the effect of a majority of electors casting their ballot for an ineligible candidate. We resolved this issue in *Patten v. Haselton*, 164 Iowa 645, 650, 146 N.W. 477, 478 (1914):

> Though the candidate thus voted for by a majority cannot be declared elected because of his ineligibility, and the majority vote is thereby rendered ineffective for such purpose, yet it is quite uniformly held that such a majority vote is effective to forbid the election of the candidate having the next highest number of votes. The effect of such majority vote is to render the purported election nugatory, and to leave a vacancy in the office thus attempted to be filled.[3]

The *Patten* principle was also invoked in *Davies v. Wilson*, 229 Iowa 100, 107, 294 N.W. 288, 292 (1940).

---

**3.** In *Patten* we said: "Some authorities make a distinction as between cases where the ineligibility of the candidate was generally known to the voters at the time of the voting and those cases where such ineligibility was not known. We have no occasion to deal with that distinction in the present case." 164 Iowa at 650, 146 N.W. at 479. The distinction referred to is between the "English rule" and the "American rule."

According to the "English rule," the voter's knowledge is material, and the votes cast for a person known to be disqualified are to be treated as void and thrown away, and are not to be counted in determining the result of the elec-

tion as regards the other candidate. Annot., 133 A.L.R. 319, 340 (1941).

The "American rule," however, provides that the voter's knowledge is immaterial, and votes cast for a disqualified person are not to be thrown away, but are to be counted. *Id.*

As in *Patten*, we need not decide whether Iowa will adopt the "English" or the "American" rule. This is because the knowledge by the voters of a fact which disqualifies a candidate is not ordinarily presumed, but must be proven. *Id.* at 346. To invoke the "English rule," the knowledge or notice to the voters must be such "as to imply a willfulness in acting," *see People ex rel. Furman v. Clute*, 50

The policy behind this principle is that the majority vote, although ineffective to elect the ineligible candidate, is effective as an expression of the will of the voters. *Patten*, 164 Iowa at 651, 146 N.W. at 479. It is believed to be more fair to negate the election than to elect "to office a man whose pretensions the people had designed to reject." Annot., 133 A.L.R. 319, 323 (1941). To allow the second-place candidate to prevail

> would be contrary to the fundamental principle underlying our form of government, which is that no candidate for nomination or election to an elective office shall be entitled to it unless the record of the valid votes cast shows him to have received either a majority, or the required plurality thereof.

*Davies*, 229 Iowa at 109, 294 N.W. at 292.

We invoke the *Patten* principle in the present case and hold that the January 1981 election in the first and sixth congressional election districts is of no effect. New elections pursuant to chapter 46 must be held for the first and sixth congressional election districts of the State Judicial Nominating Commission as soon as practicable and in conformity with this opinion. Respondent clerk shall withdraw certification of McMahon and Whicher as elected commissioners and shall certify their successors when duly elected in the new elections.

Costs are taxed to petitioners.

PETITION REVIEWED AND SUSTAINED IN PART AND DENIED IN PART.

All Justices concur except REYNOLDSON, C. J., and UHLENHOPP, J., who dissent, and LeGRAND and LARSON, JJ., who take no part.

UHLENHOPP, Justice (dissenting).

When this case was initially presented to us as an original proceeding I voted against

entertaining it on the ground that this court does not have subject matter jurisdiction. Section 4 of article V of the Iowa Constitution states that this court "shall exercise a supervisory and administrative control over all inferior Judicial tribunals throughout the State." I was of the opinion that no "inferior Judicial tribunals" are involved here. Moreover, I thought that we are not asked to exercise "supervisory and administrative control" but rather, to decide a lawsuit.

I still believe we do not have jurisdiction, and I therefore do not reach the merits. 4 Am.Jur.2d *Appeal and Error* § 4, at 536 (1962) ("If the matter does not fall within the appellate jurisdiction, the appeal should be dismissed. . . .").

This contest can be commenced as an action in district court and the losers can then, if they wish, bring it here for review in the usual way under our appellate jurisdiction.

REYNOLDSON, C. J., joins this dissent.

N.Y. 451, 466, (1872), or as to indicate "willful defiance of law," *see Sanders v. Rice*, 41 R.I. 127, 130, 102 A. 914, 916 (1918).

Petitioners have made no factual showing of knowledge. Even if constructive knowledge

could be sufficient to invoke the "English rule," we would not find it in this case based solely on the fact that the electors were attorneys.