HERBERT L. CARPENTER, Attorney General *ex rel.* v. ERNEST
L. SPRAGUE, Deputy Secretary of State *et al.*

FEBRUARY 13, 1923.

PRESENT:   Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

(1)   *Constitutional Law.   Elections in Grand Committee.   Nomination of Candidates.*

Where in an election by grand committee of the general assembly for the office
of justice of a district court, two candidates were nominated, and there were
138 votes cast of which one candidate so nominated received 69 and the
other 68 and there was one vote cast as described on the ballot for "Potter,"
under the provisions of Cons. R. I. Art. XI of Amendments, Sec. 7, "In
elections by the general assembly in grand committee the person receiving
a majority of the votes shall be elected," there was no election for there is
no provision of the constitution restricting the right of members to vote only
for those candidates who have been nominated for office.

(2)   *Elections in Grand Committee.   Unidentified Candidate.*

A vote cast for a candidate who cannot be identified should be counted in
determining the total number of votes unless it appears that the vote was
cast in wilful defiance of law, or with the intention on the part of the voter
to waste his vote.

(3)   *Constitutional Law.   Grand Committee.   Elections.*

Every intendment in favor of their constitutionality will be given to elections
held by the grand committee.

(4)   *Prerogative Writs.   Injunction.   Matters Publici Juris.*

Under its constitutional and statutory authority the supreme court has
complete original jurisdiction to issue any and all processes necessary for
the full protection of public interests in the State, and in a proper case may
issue a writ of injunction in the nature of a prerogative writ at the petition
of the attorney general on behalf of the State to restrain threatened action
injuriously affecting public right.

(5)   *Prerogative Writs.   Injunction.   Mandamus.   Executive Officer Exercising Ministerial Function.*

The writ of injunction as an original prerogative process of the supreme court
and the prerogative writ of mandamus are correlative.   Neither will
issue against a public officer as to a matter concerning which such officer
is clothed with judgment and discretion, but in affixing the seal of the State
to a commission of an officer elected in grand commitee, and in attesting
the same, the secretary of state is performing purely ministerial functions.

(6)   *Prerogative Writs.   Injunction against Secretary of State.*

The court having power as part of its original jurisdiction to issue an injunction as a prerogative process, in a matter of public concern will enjoin

the secretary of state from sealing and attesting a commission to one who has not been elected to a public office.

(7)   *Prerogative Writs.  Injunctions.   Injury to Public Right.*

The attempted exercise of the office of a justice of a district court by one not properly elected to that office, presents a case of threatened injury to public right warranting the exercise by the supreme court of its power to issue a prerogative writ of injunction against the secretary of state enjoining him from sealing or attesting the commission to such officer.

(8)   *Prerogative Writs.  Injunctions.   Injury to Public Right.*

Where the court has found that one declared to have been elected to the office of justice of a district court was not properly elected to such office, in view of the consequences that would follow to the public from his unwarranted assumption of the office, it will by its prerogative writ of injunction enjoin him from assuming such office.

PETITION on behalf of the State for a prerogative writ of injunction.   Heard and writ granted.

SWEETLAND, C. J.   This is the petition of Herbert L. Carpenter, Attorney General, at the relation of Roscoe M. Dexter, a citizen and taxpayer of the city of Central Falls, within the jurisdiction of the District Court of the Eleventh Judicial District, praying on behalf of the State that this court issue its prerogative writ of injunction against Ernest L. Sprague as Deputy Secretary of State acting as Secretary of State and against Hugh M. Devlin of Cumberland, enjoining said Ernest L. Sprague from signing, attesting and affixing the seal of the State to a commission to said Hugh M. Devlin as justice of the District Court of the Eleventh Judicial District and enjoining said Hugh M. Devlin from taking an engagement and from acting as justice of said district court.

The allegations contained in the petition, upon which the prayer is based, in substance are that at an election for the office of justice of said district court held by the two houses of the General Assembly meeting in grand committee on January 18, 1923, the Lieutenant Governor, as presiding officer of the grand committee, declared that Hugh M. Devlin had been elected to said office of justice, which declaration was contrary to the provisions of the constitu-

tion of the State; and further that in consequence of the unconstitutional declaration thus made by the presiding officer the respondent Sprague is about to sign and attest a commission to said Devlin as his warrant to act as said justice and is about to affix the seal of the State thereto; and further that "said Hugh. M. Devlin contrary to the constitution and laws of the State is about to take his engagement as justice of the District Court of the Eleventh Judicial District and assume all the duties, rights and authority of said office to the great injury and detriment of the inhabitants of the State of Rhode Island and of the City of Central Falls and of the towns of Lincoln and Cumberland within the jurisdiction of said District Court of the Eleventh Judicial District." Citation was issued to the respondents and said petition was heard before us.

The constitutional provision which it is claimed said declaration of the Lieutenant Governor violates is contained in Section 7 of Article XI of the Amendments to the Constitution and is as follows: "In elections by the general assembly in grand committee the person receiving a majority of the votes shall be elected."

Under the provisions of Section 15, Chapter 22, General Laws, 1909, in the absence of the secretary of state the deputy secretary of state may do all things by law required of the secretary of state as fully as the secretary himself might or could do. Under the provisions of Section 4, Chapter 26, General Laws, 1909, the secretary of state shall act as secretary of the grand committee and shall keep a full record of the proceedings thereof in a book to be provided and kept by the secretary of state for that purpose. At the hearing on this petition it appeared that at the meeting of the grand committee held on January 18, 1923, the secretary of state was absent, because of illness, and that the respondent, Ernest L. Sprague, as Deputy Secretary of State, kept the records of the proceedings of the grand committee required by law. It does not appear to be the practice of the grand committee to approve the correctness

of the records of its proceedings kept by the secretary of
state.   In accordance with our decision in *O'Neil* v. *Demers*,
44 R. I. 504, the petitioner was permitted to introduce the
records of the proceedings of the grand committee of
January 18, 1923, but was not permitted to introduce other
evidence in regard to said proceedings.   The respondents.
did not object to the introduction of this record and no
question is raised as to its correctness.   From such records
it appears that the following proceedings were had in
grand committee in relation to the election for Justice of
the District Court of the Eleventh Judicial District: "For
the office of Justice of the District Court of the Eleventh
Judicial District Representative Costigan, of Cumberland,
nominates Hugh M. Devlin of Cumberland.   Representa-
tive Huey, of Lincoln, nominates Roscoe M. Dexter of
Central Falls."   It then appears from the record that two
ballots were taken, each of which was declared by the
Lieutenant Governor to be ineffective because the number
of votes cast exceeded the number of members entitled to.
vote in grand committee.   The record continues: "A.
third ballot is ordered and taken which results as follows:

Total number of votes cast,  138
Necessary for choice,          70
Hugh M. Devlin has             69
Roscoe M. Dexter has           68
Potter has                      1

and Hugh M. Devlin is declared elected.

"Representative Andrews of Cranston protests the
declaration of the election of Hugh M. Devlin as Justice of
the District Court of the Eleventh Judicial District and calls
attention to the constitutional provision requiring elections.
in grand committee to be by majority vote.

"His Honor the Lieutenant Governor rules that Hugh M.
Devlin has received a majority of the 137 votes cast for the
candidates nominated in grand committee for the office of
Justice of the District Court of the Eleventh Judicial
District."

The statement contained in the record that of the total number of votes cast 70 were necessary for a choice is correct. The declaration that Mr. Devlin, who received but 69, was elected is plainly inconsistent with the facts and is erroneous. The Lieutenant Governor based his conclusion upon the fact that Mr. Devlin received a majority of the votes cast for candidates who had been nominated in grand committee. There is no provision of the constitution that in an election in grand committee only those persons may be voted for who have been nominated. Such attempted restriction upon the right of members voting in grand committee is unwarranted.

It was suggested to us by counsel for the respondents that the Potter vote should be disregarded because the person voted for can not be identified. Whether or not that statement is correct does not appear. If, however, it should be true, under the well established rule of law that fact would not warrant disregarding the vote in determining the total number of votes cast. In the course of his argument counsel for the respondents admitted that the circumstances do not warrant the assumption that any member of the grand committee intended to cast an ineffective vote. In *Gill* v. *Mayor, &c. of Pawtucket*, 18 R. I. 281, *In re Corliss*, 11 R. I. 638, and in *Sanders* v. *Rice*, 41 R. I. 127, this court has passed upon the general question raised by this contention of the respondents' counsel. The last named case dealt with votes cast at an election in grand committee. The matter before the court in each of those cases was with regard to votes ineffective because cast in favor of candidates who were disqualified. The rule of law laid down, however, is of general application. Whether a vote is cast for a candidate who is disqualified or for one who can not be identified, unless it appears that the vote was cast in wilful defiance of law or with the intention on the part of the voter to waste his vote, such vote should not be regarded as a nullity in determining the total number of votes cast. This rule is in agreement with decisions in other jurisdic-

tions, as appears by the cases cited in the three Rhode Island cases, *supra*. It thus appears that there was no election for the office of justice of the District Court of the Eleventh Judicial District in grand committee on January 18, 1923, and that Hugh M. Devlin acquired no title to the office by reason of said declaration of the presiding officer.

The position of this court has always been that every intendment in favor of its constitutionality will be given to an act of the General Assembly, as a co-ordinate branch of the government. Such act will not be set aside unless its (3) invalidity clearly appears. This rule is applicable to elections held by the grand committee. In this matter the full record of the proceedings of the grand committee is before us and such record admits of no intendment in favor of the constitutionality of the declaration of the Lieutenant Governor. It may be urged that the declaration in question was not the act of the grand committee but of its presiding officer merely, and that the record has not been approved by the body. To that it may be said that although a protest was made such protest was not acted upon by the grand committee and by its failure to set the declaration aside that body acquiesced in and approved the declaration of its presiding officer. The consideration of that question is of little moment, however, for the terms of the constitution conclusively limit the powers of both the Lieutenant Governor and the grand committee.

The respondent questions the power of this court to grant the prayer of the petition against the respondent Sprague on the ground that it would result in an interference with the functions of an executive officer of the State, and against the respondent Devlin on the ground that it would be the determination of his title to office by injunction rather than under a writ of *quo warranto* or by proceedings in the nature (4) of *quo warranto*. In his argument counsel for the respondents treats the petition as one seeking the ordinary non-prerogative decree of injunction as entered in a court of equity in suits involving purely private rights. The prayer

here is for a prerogative writ or process of injunction issuing under the original jurisdiction of this court in favor of the State in a matter *publici juris*. Article XII of Amendments to the Constitution of the State provides with reference to the original jurisdiction of this court that "it shall have power to issue prerogative writs and shall also have such other jurisdiction as may from time to time be prescribed by law." Section 2, Chapter 272, General Laws, 1909, provides that in addition to the ordinary prerogative writs therein named this court may issue "all other extraordinary and prerogative writs and processes necessary for the furtherance of justice and the due administration of the law." It thus appears that this court has been given very extensive jurisdiction in matters calling for the protection of public rights. In *Attorney General* v. *Railroad Companies*, 35 Wis. 425, the court considered the process of injunction issued under its original constitutional jurisdiction in matters *publici juris* as a *quasi* prerogative writ. By Section 6, Chapter 274, General Laws, 1909, the power is conferred on this court to frame and issue such writs and processes as may be necessary to carry into effect all the powers and jurisdiction conferred upon it by the constitution or by law. In commenting on this power in *Hyde* v. *Superior Court*, 28 R. I. 204, at 211, the court said, "In the exercise of the jurisdiction thus conferred this court is not confined to any narrow technical definition of the office of the extraordinary writs named in Section 2; but it may use those writs in their accepted forms when adapted to the purpose sought; or it may adapt them, or modify them; or it may frame new writs and processes, as above expressly provided." It appears to have been the intention of the constitution and the statutes to confer upon this court complete original jurisdiction to issue any and all processes necessary for the full protection of public interests in the State. We are of the opinion that under its broad powers, as part of its original jurisdiction, in a proper case, this court may issue a writ or process of injunction in the nature of a prerogative

writ.  Such writ or process will issue at the petition of the Attorney General on behalf of the State to restrain some threatened action injuriously affecting public right.  The constitutions of two of the states at least, Colorado and Wisconsin, in conferring original jurisdiction on their respective Supreme Courts have classed writs of injunction with the ordinary prerogative writs of the common law.  It is apparent that the writ of injunction furnishes an effective instrument for the protection of public rights.

We will consider this petition first as it relates to the respondent Sprague.  The writ of injunction as an original prerogative process of this court and the prerogative writ of mandamus are correlative.  Neither will issue against a public officer as to a matter concerning which such officer is clothed with judgment and discretion.  In affixing the seal of the State to the commissions of officers elected in grand committee and in attesting the same the Deputy Secretary of State is performing purely ministerial functions.  Courts have not hesitated to control such ministerial functions by mandamus when it appeared that an officer was illegally refusing to act.  In the well known case of *Marbury* v. *Madison*, 1 Cranch, 137, MARSHALL, C. J., held that the refusal of the Secretary of State of the United States to deliver a commission to a party entitled to it was a failure to perform a ministerial act and presented a plain case for the issue of mandamus by a court having such original jurisdiction.  In *Rose* v. *Bennett*, 25 R. I. 405, it was held that the secretary of state in receiving certificates of nomination of political candidates acts in a ministerial capacity and mandamus will lie against him.  See also *Corcoran* v. *Bennett*, 20 R. I. 6.  In *Florida ex rel* v. *Crawford*, 14 L. R. A. 253, the secretary of state was compelled by mandamus to seal with the great seal of the state and to countersign the commission of a United States senator appointed by the governor.  In *State ex rel* v. *Governor of Ohio*, 5 Ohio St. 528, it was held that the governor of the state, in regard to a ministerial act, might be made amenable to the compulsory

process of the court by mandamus. In the matter now under consideration if the respondent Devlin appeared to have been elected in accordance with the provisions of the constitution, and the respondent Sprague should refuse to seal and attest a commission to said Devlin the court would not hesitate by mandamus to compel the secretary to per-

(6) form his plain legal duty. We have declared above that power has been conferred on this court as part of its original jurisdiction to issue an injunction as a prerogative process, distinct from the ordinary use of injunction in equitable proceedings. Therefore if the matter appears to be of sufficient public concern, we shall not hesitate to enjoin the deputy secretary of state from sealing and attesting a commission to Mr. Devlin who unquestionably has not been elected. In *State* v. *Cunningham,* 81 Wis. 440, the court in two carefully prepared concurring opinions decided that the secretary of state of Wisconsin should be enjoined from publishing notices for the election of members of the legislature under an invalid apportionment act. The court acted under its original prerogative jurisdiction and not as a court having original equity jurisdiction. We will consider whether the circumstances before us present a case of threatened injury to public right. In *State ex rel* v. *Hughes,* 104 Mo. 459, the court held that an injunction in the name of the state on the relation of the prosecuting attorney against a circuit judge, clerk of court and sheriff, was a proper proceeding by which to test the constitutionality of an act regulating the times and places of holding the circuit court in one of the counties of the state. In that case the court in considering the interest of the public in the matter of the sessions of the circuit court said, "The due administration of the laws of the state is more largely dependent upon the prompt, proper and efficient exercise of its power than upon all other governmental agencies. Every citizen of the state is interested in such an administration not only in the particular locality in which he happens to reside but in every nook and corner of the state for he can not tell in

what hour he may need the protection of those laws admintered by this tribunal nor in what part of the state."

The matter before us involves the functions of a judicial officer whose judgments may affect the property or liberty of any inhabitant of the State. It is one of the prerogatives of the State itself to provide for the due administration of justice throughout its limits. The district courts of this State have an important jurisdiction, both civil and criminal. (7) To the inhabitants of the city and towns included in the eleventh judicial district, to all officers charged with the service of the processes of its court, to all litigants before that court, it is of vital interest that a justice legally elected shall preside in the court of that district. The office of justice of that court is now in the possession of an officer having title to the same *de jure* until his successor is duly elected and qualified. If a commission should issue to Mr. Devlin and he should qualify thereunder, and the present incumbent should abandon the office and Mr. Devlin should assume its duties then probably in so far as the interests of the public may be concerned on grounds of policy the law would endeavor as far as possible to support the acts of Mr. Devlin as those of a *de facto* officer with color of authority. The defect in the title of Mr. Devlin, however, would remain obvious and a matter of general public knowledge. The validity of his official judgments would undoubtedly be questioned, and officers serving civil and criminal process issued by him would be called upon to defend their acts. Although such objections might finally be overruled and the judgments entered and the processes issued by him supported, litigants would be put to vexatious and costly delays. It is quite unlikely that the present incumbent having possession and perfect title to the office would surrender it to Mr. Devlin having merely a color of title, or would cease to exercise the functions of the office. In such circumstances the assumption of the duties of the office by Mr. Devlin would amount to usurpation, his acts would be void, and the whole situation would lead to grave public harm.

In our opinion a case has been presented of threatened injury to public right. The writ will issue against the Deputy Secretary of State enjoining him in accordance with the prayer of the petition.

It is perhaps unnecessary to consider the prayer of the petition against Hugh M. Devlin or to order the writ to issue against him. We have already passed upon the legality of his election and have ordered an injunction against the issuance of a commission to him. Without the commission it is questionable whether he would have even a color of authority to assume the office. We have no doubt that Mr. Devlin will welcome this early determination of his title to an office to which he clearly has not been elected, which, if he attempts to exercise its functions, will bring vexation to him and harm to the public, and the emoluments of which will continue to belong to the present incumbent until the legal election and qualification of the successor of such incumbent. We are confident that in view of what we have said above Mr. Devlin without an injunction will not attempt to take the engagement or to act as justice of the District Court of the Eleventh Judicial District by virtue of the declaration of his election in grand committee on January 18, 1923. Our decision is that in such circumstances as those presented by this petition, from which it plainly appears that evil consequences to the public will follow an unwarranted assumption of office, we are not obliged to require the public interest to await such consequences, but have jurisdiction, as above set forth, to avert the threatened harm and enjoin the assumption of office. That there may be no uncertainty as to our determination in that regard, we order that the writ issue enjoining the respondent Devlin in accordance with prayer of the petition.

*Herbert A. Rice,* for petitioner.

*Fitzgerald & Higgins, William H. Camfield, Albert B. West,* for respondent, Hugh M. Devlin.