242 A.2d 421.

Pasco DeCesare *et al. vs.* Board of Elections *et al.*

JUNE 5, 1968.

Present: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J. The petitioner, John A. Notte, III, is one of 93 electors who qualified as candidates for election to the North Providence democratic town committee, which election was held at the party primary in North Providence on September 13, 1966. Also qualifying was Roland J. Godin who died August 13, exactly one month prior to the holding of the primary.

Pursuant to the provisions of G. L. 1956, §17-12-12, as

amended by P. L. 1958, chap. 18, sec. 1, now §17-12-11[1], the then encumbent North Providence democratic town committee seasonably endorsed 60 of the 93 qualified candidates, this being the number to be elected. The candidate Godin was one of those endorsed, his death not occurring until after the time fixed for the filing of endorsements. The general assembly made provisions for such a contingency by enacting P. L. 1958, chap. 18, sec. 1, now §17-14-17, as amended.[2] It authorizes the committee making the original endorsement to substitute any other qualified elector as an endorsed candidate in the event of a death as here occurred. However, in the instant case the chairman and secretary of the North Providence democratic town committee were advised by the secretary of state's office that there was insufficient time to print new ballots and the town committee took no action. Thus, at the primary, the name of the deceased candidate Godin appeared on the ballot in the column where the names of the 60 endorsed candidates were listed, while that of petitioner was listed among those unendorsed.

When the final tally of votes was completed on the day following the primary, the North Providence board of canvassers, hereinafter called the local board, ascertained that all 60 candidates listed as endorsed had a plurality over

---

[1]Each town, ward and city committee shall file with the appropriate local board the list of candidates in such town, ward or city which have the endorsement of the committees.

Each district committee shall file with the secretary of state the list of candidates in such district which have the endorsement of the committee.

Such endorsement shall be filed with the appropriate local board or the secretary of state, as the case may be, not later than 5 p. m. of the second day after the last day for filing declarations of candidacy.

[2]When an endorsed nominee as a candidate to be voted upon at any such primary has deceased prior to the holding of said primary, the committee having the original authority to endorse such candidate shall substitute as the endorsed nominee for candidate to be voted upon at said primary any person qualified to vote at such primary in the place and stead of such deceased nominee.

those candidates unendorsed. Numerically the name of Godin ranked 59th in the balloting and another endorsed candidate ranked 60th. The petitioner Notte led all unendorsed candidates and ranked 61st.

On that evening, namely September 14, 1966, the local board consulted the town solicitor on the question of whether petitioner was entitled to receive a certificate of election as having been one of the 60 candidates to receive a plurality within the intendment of P. L. 1958, chap. 18, sec. 1, now §17-15-29.[3] Presumably advised that petitioner had not been elected, the local board on September 15 issued certificates of election to the 59 candidates whose elections were not in question. That same day, petitioner hand-delivered to the chairman of the local board a demand that a certificate of election be delivered to him. Later the same day, he hand-delivered a copy of this demand to an official of the state board of elections, hereinafter called the state board.

Also on September 15, the clerk of the local board wrote to the chairman of the democratic town committee, informing him that a vacancy existed and should be filled. Acting on this information, the chairman on September 16 wrote to the successful candidates, related the information received from the local board's clerk, and gave notice of a meeting to be held September 22 for the purpose of filling the vacancy. This meeting was held and one Thomas Ryan

---

[3] In determining the nomination or election of a candidate at a primary election, the person receiving the largest number of votes although less than a majority of all the votes cast for the candidates for a particular office, shall be declared so nominated or elected. Where there is more than one (1) person to be elected to a particular office or place, those persons equaling that number of officers to be elected to said office or place receiving the largest number of votes although less than a majority of all the votes cast for all the candidates for said office or place, shall be declared nominated or elected, as the case may be, unless otherwise provided by existing law.

was chosen by a quorum of the other 59 to fill the vacancy[4] reported by the clerk of the local board.

Meanwhile, petitioner, having received no response from the local board by September 21, on that day officially appealed to the state board for a review of the local board's inaction, pursuant to the provisions of P. L. 1962, chap. 201, sec. 1, now §17-7-5(d).[5] The state board held a hearing on petitioner's appeal and thereafter rendered a decision which held, in substance, that Roland J. Godin having died prior to the primary was not a person within the meaning of §17-15-29, *supra,* and that as a consequence petitioner did qualify as the 60th candidate to be elected. Consistent with its decision the state board ordered the local board to issue a certificate of election to petitioner.

Thereafter, the members of the local board, acting in their official capacities together with the aforesaid Thomas Ryan, filed a complaint in the superior court seeking judicial review of the state board's decision pursuant to the provisions of now G. L. 1956, §42-35-15, enacted by P. L. 1962, chap. 112, sec. 1, known and cited as the Administrative Procedures Act.[6] This act governs administrative remedies determinable by all state agencies not expressly exempted. The state board is a state agency not so exempted.

---

[4] The record discloses that 51 of the successful candidates were present at the September 22 meeting at which Ryan was purportedly elected to fill the vacancy; the 51 presumably acting on the authority of P. L. 1958, chap. 18, sec. 1, now §17-12-12.

[5] The state board shall also have jurisdiction over all election matters on appeal from the local board and over such other matters pertinent and necessary to the proper supervision of the election laws.

[6] (a) Any person who has exhausted all administrative remedies available to him within the agency, and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter. This section does not limit utilization of or the scope of judicial review available under other means of review, redress, relief, or trial de novo provided by law. Any preliminary, procedural, or intermediate agency act or ruling is immediately reviewable in any case in which review of the final agency decision would not provide an adequate remedy.

When petitioner Notte filed his appeal with the state board, it became a "contested case" as defined by §42-35-1(b).[7]

It was in recognition of this that the members of the local board and Ryan sought judicial review pursuant to §42-35-15, *supra*. After a hearing in the superior court, held in accordance with the provisions of the Administrative Procedures Act, a justice of that court rendered a decision reversing the decision of the state board and ordering the local board to issue a certificate of election to Ryan. A judgment was accordingly entered.

Within seven days, as provided by and pursuant to P. L. 1966, chap. 213, sec. 1, now §42-35-16, as amended, petitioner applied to this court for a discretionary writ of certiorari. The writ issued and the records in the case were certified to this court for our examination.

After the case had been orally argued in this court, it became apparent from an examination of the record that there existed a serious question which the parties had neither orally argued nor briefed. This question was of such overriding importance as to be raised sua sponte by us and further argument was ordered on the question which was directed to the parties as follows:

> "* * * whether the members of the board of canvassers, acting in their offiicial capacity, and/or Thomas Ryan, purportedly elected to fill an alleged vacancy in the town committee by the remaining members who were committee members elect until organized pursuant to the applicable statute, are persons aggrieved in a contested case within the meaning of G. L. 1956, §42-35-15, as amended, so as to give their appeals standing in the superior court."

---

[7](b) "contested case" means a proceeding, including but not restricted to ratemaking, price fixing, and licensing, in which the legal rights, duties, or privileges of a specific party are required by law to be determined by an agency after an opportunity for hearing;

At the further argument as thus ordered, no serious contention was made that the members of the local board were aggrieved persons within the meaning of §42-35-15, *supra,* so as to give them standing in the superior court. Indeed, it is difficult to see how they could be in light of the question at issue. They have no legal interest in the outcome of the appeal taken by petitioner from their failure to issue him a certificate of election, having no duty to themselves or to the public to persuade the superior court that their view of petitioner's status was correct. Their position is analogous to that of a probate judge who, as respondent in a petition for mandamus, was held by this court to have no right of appeal as a person aggrieved by a judgment of the superior court out of which the writ issued. *Bowles* v. *Dannin,* 62 R. I. 36, 2 A.2d 892.[8]

The case of the plaintiff Ryan, however, presents a different question. It is argued on his behalf that he is a person aggrieved within the intendment of §42-35-15, *supra,* because on September 23, 1966, the local board issued a certificate of election to him on notice to it that at the September 22 meeting Ryan had been elected to fill the vacancy declared existent by the local board. Having been issued a certificate of election, they argue, he was entitled to judicial review of the state board's decision by reason of the provisions of §42-35-15 (c). It provides:

"The filing of the complaint does not itself stay enforcement of the agency decision. The agency may

[8]The question in the instant case is concerned with the local board's claim of judicial review as a matter of right. It is to be distinguished from that postured in those cases where the subordinate agency invokes judicial review in this court by way of common-law certiorari on the ground that the decision sought to be reviewed was jurisdictionally invalid. In such latter cases the public interest involved may move this court to issue its writ of certiorari by reason of such public interest. See *Board of Canvassers & Registration* v. *Board of Elections,* 82 R. I. 358, 107 A.2d 651, *Board of Police Comm'rs* v. *Reynolds,* 86 R. I. 172, 133 A.2d 737, and *Tedford* v. *Reynolds,* 87 R. I. 335, 141 A.2d 264.

grant, or the reviewing court may order, a stay upon appropriate terms."

He invoked this provision by filing an affidavit in the superior court, which affidavit relates that he was elected by the remaining members of the town committee and by reason thereof was issued a certificate of election. On the strength of his complaint and accompanying affidavit, the superior court justice stayed the decision of the state board and admitted Ryan as a party in interest.

Whether he had standing to be heard in the superior court turns on the affirmative resolution of two questions. First: is §42-35-15(c), *supra*, applicable to a person not privy to the contest upon which the state agency is passing? In this regard it is to be noted that at the time the state board acquired jurisdiction of petitioner's appeal from the local board, Ryan could claim not even a theoretical interest adverse to petitioner.

Because of the view we take of the second question, however, we leave the determination of said first question to a case in which it will be the ultimate issue. The remaining question may be briefly stated as follows: did the 59 candidates elected to the town committee at the September 13 primary constitute a legal entity of which it could be said that a vacancy therein existed within the meaning of §17-12-12, *supra*?

Public Laws 1958, chap. 18, sec. 1, which in September 1966, was cited as §17-12-9, as amended, provides that town and city political committees were to organize biennially in the month of October in every even year; and §17-12-8 as enacted by P. L. 1958, chap. 18, sec. 1, provides that such committees when organized shall hold office until their successors are elected, qualified and organized. See *Martell* v. *Board of Canvassers & Registration*, 86 R. I. 390, 135 A.2d 265, and *Gallant* v. *LaFrance*, 101 R. I. 299, 222 A.2d 567.

Although the cited cases are not exactly in point, the rationale of our holdings therein was motivated by a per-

suasion that legislative provisions relating to primary elections were enacted to secure to political parties prescribed procedures for the orderly conduct of their affairs. How this may be best accomplished is solely within the discretion of the general assembly. See *Opinion to the Governor,* 43 R. I. 421, 112 Atl. 900. Thus, when apposite statutory provisions for the orderly conduct of political party affairs are considered, it becomes clear that until October of 1966, the 59 committee members-elect did not constitute a legal entity within which there could be a vacancy as contemplated by §17-12-12, *supra.* In this regard, the provisions of §17-15-38, as enacted by P. L. 1958, chap. 18, sec. 1, are enlighteningly significant. The section provides:

"Whenever the nominee of a party for a particular office dies after the primary or in the event that any other contingency occurs which would result in depriving a party of a nominee for any office and special provision has not been made for it by law, the state committee of that party or a duly authorized subcommittee thereof in the case of state officers and the appropriate city, town, ward or district committee or any duly authorized subcommittee thereof in the case of candidates for the other offices covered by §17-15-7, may file with the appropriate authority provided by chapter 17 of this title the name of its nominee for said office * * *."

It is readily apparent therefrom that the legislature did not intend that there would be two competing committees, each asserting authority in that period between the primary and the organization of the committee-elect to substitute the party's nominee in the place of the nominee whose death occurred during such period.

Indeed, with the enactment of P. L. 1967, chap. 54, now §17-12-9, as amended, the legislature changed the date for party committee organization from October biennially in the even years to January biennially in odd years, thus providing for the continuity of such committees through the

campaign period between October and the election in November.

We conclude, therefore, that on September 22, 1966, when the successful candidates met for the purpose of filling a purported vacancy in their ranks, they were merely town committee members-elect whose certificates of election entitled them to nothing more than the right to organize as the North Providence democratic town committee and not even this until October.

For the foregoing reasons we hold that the members of the local board and Thomas Ryan were not persons aggrieved by the decision of the state board within the intendment of §42-35-15, *supra*. Consequently, they were without standing in the superior court and the judgment adverse to the petitioner, which alone was before us, is quashed.

Certiorari granted.

JOSLIN, J., whom KELLEHER, J., joins, concurring in part and dissenting in part. While I agree that the 59 committee-members elect were without authority on September 22, 1966 to select a 60th member to the town committee, I cannot agree that the petitioner Notte is entitled to be that 60th member or that the decision of the board of elections should be immune from judicial review. That is the effect of the majority decision that neither Ryan nor the local board may appeal because neither is "aggrieved."

In determining whether the case was properly before the superior court, the majority say that it is difficult to see how the members of the local board, acting in their official capacities, can be aggrieved persons. I have no such difficulty. They equate the local board's standing as an appellant with that of the probate judge, who, in *Bowles* v. *Dannin*, 62 R. I. 36, 2 A.2d 892, appealed because of an admitted deep concern that his decision was in accordance with law and should, therefore, have been sustained. This court properly labelled his opinion that he had a legal interest in having

his decision upheld on appeal as a "mistaken belief" and found that it was no concern of his whether the appellate court agreed or disagreed with his decision.

Here, however, the members of the local board were not in a position comparable to that of the probate judge in *Bowles* v. *Dannin, supra,* inasmuch as their purpose in appealing was different from his. The public interest was at stake and the members of the local board, by appealing, were acting, if not expressly, then implicitly, as representatives of the people of North Providence, and particularly on behalf of the more than 5,000 among them who had voted in the primary. Certainly these people were concerned in having a properly constituted committee to manage the affairs of the Democratic Party in their town. It is basically wrong, in my judgment, to find that such a concern is insufficient as a basis for the board of canvassers, acting in a representative capacity and on behalf of the people, to seek a judicial review of the correctness of the state board's ruling.

In a related area, although one where the public interest is less real, it has been held that a local liquor licensing board is deemed to represent the people of a municipality and to be acting on their behalf in seeking judicial review in order to prevent the state liquor control administrator from exercising power in granting liquor licenses beyond the maximum number fixed by the local law. *Board of Police Comm'rs* v. *Reynolds,* 86 R. I. 172, 133 A.2d 737; *Tedford* v. *Reynolds,* 87 R. I. 335, 141 A.2d 264.

The majority distinguish those cases by saying that there judicial review was invoked by way of discretionary common-law certiorari whereas, here, it was claimed as a matter of right. See f.n.8. What they say about the difference between certiorari and appeal is, of course, true, but the issue in the liquor cases, just as in this case, was not whether the court should exercise its discretion, but whether the applicants were "aggrieved" and, therefore, entitled

to seek judicial review.[1] A careful reading of *Board of Police Comm'rs* v. *Reynolds, supra,* makes this clear. The respondent moved to quash the writ on the ground that the petitioner was not a party in interest or "aggrieved." In denying the motion on that ground, the court held that the board represented the people of the city who had a "real interest" in the question at issue. When that interest was impaired by the decision of the state administrator, members of the board, as representatives of the people, were "aggrieved" and thereby qualified as petitioners for the writ. *Tillinghast* v. *Brown University,* 24 R. I. 179, 52 A. 891. So too in this case where the people of North Providence had a "real interest" in seeing that one whom they had not elected should not serve. Because the decision of the state board threatened that interest, the local board members, on behalf of the people, were "aggrieved" and thereby acquired the right to appeal that decision.

Equally to the point is *Board of Canvassers & Registration* v. *Board of Elections,* 82 R. I. 358, 107 A.2d 651, where the board of canvassers and registration of Woonsocket brought certiorari to review a decision of the state board of elections changing the district in which a qualified elector had been certified as eligible to vote. In dismissing the argument that the board lacked standing the court said that "* * * the public interest in the merits of the principal question is such that we deem it advisable at this time to pretermit the matter of procedure," at 360, 107 A.2d at 652. If the district where the elector was to vote was of sufficient importance and significance to allow the judicial process to be invoked, then clearly how a town political committee shall be constituted is similarly deserving.

Having determined that the case was properly before the superior court, I perforce go further than the majority and

---

[1]"Aggrievement," moreover, is no less a jurisdictional prerequisite to certiorari than it is to an appeal. *Champlin* v. *Probate Court,* 37 R. I. 349, 92 A. 982.

reach the underlying question of whether or not the election of the 60th member of the town committee failed because a plurality of those voting, not knowing that Godin had deceased prior to the primary, cast their votes for him. The majority, by allowing the decision of the state board to stand, have, in effect, confirmed the title to office of a candidate who received less than the number of votes required for election and who could not have been elected but for the mistake of those who cast their votes for a deceased person. With that result, I cannot agree. It runs counter to an unbroken line of decisions in this state which have consistently followed the rule that votes cast for a deceased, disqualified or ineligible person, although ineffective to elect such a person to office, are nonetheless effective to prevent the election of the person receiving the next highest number of votes. Obviously inapplicable on the facts of this case is the exception to that rule under which such a vote is deemed void if cast in wilfull defiance of the law or with the intention on the part of the voter to waste his vote.

The rule was first applied in this state in an opinion to the Governor. *In re Corliss,* 11 R. I. 638. There, the justices advised that the disqualification of a person chosen an elector of the President and Vice-President of this country in November 1876 did "not result in the election of the candidate next in vote, but in a failure to elect." The votes for the disqualified candidate the justices said, were "* * * not to be counted any more than if they were thrown for a dead man, or the man in the moon * * *," and the advice to the Governor was that the selection of an ineligible candidate, not only rendered his election void, but in addition left one place in the electoral college unfilled. *Corliss* has since been followed and has never been either overruled or qualified. *Sanders* v. *Rice,* 41 R. I. 127, 102 A. 914; *Carpenter ex rel. Dexter* v. *Sprague,* 45 R. I. 29, 119 A. 561; *Dupre* v. *St.*

*Jacques,* 51 R. I. 189, 190, 153 A. 240, 241. See also *Gill* v. *Mayor & Aldermen,* 18 R. I. 281, 27 A. 506.

The majority, however, by allowing the candidate ranking 61st at the polls to hold office, in substance, affirm the state board's decision to throw away the votes cast for the deceased candidate. That decision completely ignores the principle that such votes are no less legal because cast in favor of one who cannot serve. Even though they may have been ineffectual to elect the deceased candidate, they nevertheless entered into the calculations leading to the determination of which of the candidates received the plurality necessary to election. The result of those calculations was that only the decedent and 59 other candidates received the pluralities which G. L. 1956, §17-15-29, as amended, requires for election to membership on the town committee. It follows, therefore, that only the 59 living candidates were elected. As to the 60th position, the election failed, and the petitioner Notte, even though he received the next highest number of votes, is not entitled to hold and should not have been awarded the office by the state board. In my judgment, there still exists a vacancy on the committee which now may be filled according to law.

*Robert S. Ciresi,* Town Solicitor, *Michael A. Abatuno,* attorney for Thomas Ryan; *William G. Gilroy,* attorney for members of District Committee, respondents.

*Aram A. Arabian, John A. Notte III,* for petitioner.