295 A.2d 416.

SAMUEL H. RAMSAY, JR. *et al. vs.* DEEB G. SARKAS, *Liquor Control Administrator, et al.*

OCTOBER 12, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J. This is a petition for certiorari, seeking review of a decision of the Superior Court dismissing the petitioners' appeal from a ruling of the state liquor control administrator, hereinafter referred to as the state licensing authority. The petitioners, in their capacity as the Board of Licensing Commissioners of the City of East Providence, hereinafter referred to as the local licensing authority, sought review pursuant to the provisions of the Administrative Procedures Act, G. L. 1956 (1969 Reenactment) §42-35-15(a). The Superior Court held that the local licensing authority was without standing under said §42-35-15(a) to challenge the specific decision of the state licensing authority. The trial justice dismissed the complaint and affirmed the decision of the state licensing authority, whereupon we ordered this writ of certiorari to issue, and in accordance with its mandate the pertinent records were duly certified to this court for our examination.

It appears from the record that the East Providence Beverage Co., hereinafter referred to as the applicant, is the holder of a Class A retail beverage license which permitted it to conduct its business in premises located at 328 Warren Avenue in the city of East Providence. The applicant had applied to the local licensing authority for permission to transfer its Class A retail beverage license to 191 Willett Avenue in that city, such application for permission to re-

locate its place of business being made pursuant to the provisions of §3-5-19.

The local licensing authority, after hearing, denied the application to relocate the applicant's place of business, and on September 22, 1970, the applicant petitioned the state licensing authority for a review of that decision. On March 16, 1971, the decision of the local licensing authority was reversed by the state licensing authority and that authority, by order, directed the local licensing authority to issue a permit for the relocation of the premises used by the applicant in the conduct of his business in accordance with his application.

Thereafter, the local licensing authority, pursuant to §42-35-15(a), proceeded to prosecute an appeal from the decision of the state licensing authority to the Superior Court. In the course of prosecuting this appeal, the parties submitted to the Superior Court an agreed statement of facts. At the conclusion of the agreed statement of facts, the parties stipulated that the hearing "could be limited to the question" of whether the state licensing authority under the pertinent statutes had jurisdiction to review and reverse a decision of a local licensing authority with respect to a matter which involved permitting the holder of an existing license to relocate the premises within which he conducted that business to another part of the municipality involved.[1]

A decision on the question which the parties presented to the Superior Court on agreement would require a construction of the statute conferring appellate jurisdiction upon the state licensing authority, namely, §3-7-21, and the effect thereon of the statute giving to local licensing authorities

---

[1] The precise question suggested to the Superior Court as being the prime issue read as follows: "Does the Liquor Control Administrator have the authority under the statutes to reverse the action of the Board of License Commissioners of the City of East Providence in the matter of a liquor license transfer from one location within the city to another location within the city?"

power to permit the transfer of an existing license from one place to another within the town in which it was issued, to wit, §3-5-19. The trial justice, however, after noting the contentions of the parties concerning the power of the state licensing authority to overrule a local authority on the relocation of existing licenses, acting sua sponte, went directly to what she considered the antecedent issue, that is, the question of the standing of the local licensing authority to prosecute an appeal under §42-35-15(a).

The trial justice, relying on *New England Telephone & Telegraph Co.* v. *Fascio,* 105 R. I. 711, 254 A.2d 758 (1969), noted that the exclusive method for obtaining a review by the Superior Court of agency decisions is by way of §42-35-15(a) and that to have standing to initiate such an appeal, it must be established that the appellant is an "aggrieved" person within the meaning of that section. She then went on, citing *Fascio,* to hold that where a statute requires aggrievement to provide standing for judicial review, this court has generally held that such aggrievement results when an order, decision, or decree adversely affects in a substantial manner some personal or property right of the party or imposes upon it some burden or obligation. This is, of course, the classic test for establishing aggrievement and has been recognized at least from *Tillinghast* v. *Brown University,* 24 R. I. 179, 52 A. 891 (1902), having been reaffirmed in *Newport National Bank* v. *Providence Institution for Savings,* 101 R. I. 614, 226 A.2d 137 (1967).

The trial justice then concluded that nothing in the record established that the decision of the state licensing authority adversely affected in any substantial manner some personal or property right of the local licensing authority or imposed any burden or obligation upon it. She further concluded that the local licensing authority was not aggrieved within the meaning of §42-35-15(a) and dismissed the appeal. With this conclusion we agree.

Counsel for the local licensing authority has argued that the instant case should be treated as an exception to the requirement of aggrievement as a prerequisite to the prosecution of such an appeal. The substance of this argument is that where an administrative board seeks to appeal a decision of a state authority to the Superior Court and the issue raised concerns a public interest that extends beyond the interests of the immediate parties, the board in its capacity as a representative of the public should be given standing to prosecute the appeal.

This court has on occasion recognized the necessity for permitting an agency to prosecute an appeal to the Superior Court or a petition for writ of certiorari in order to protect or promote an interest in the outcome of the controversy shared by the public at large. In order to do this, we have on occasion conferred a sort of vicarious standing to prosecute appeals from the decisions of administrative agencies even though such agencies could not satisfy the test of aggrievement set out in *Fascio*. *Board of Police Comm'rs* v. *Reynolds,* 86 R. I. 172, 133 A.2d 737 (1957), and *School Committee* v. *State Board of Education,* 103 R. I. 359, 237 A.2d 713 (1968), are typical of the cases in which we have so acted.

In our opinion, however, it would serve no useful purpose to extend this opinion by a discussion of when circumstances exist in which such action would be appropriate. In the *Reynolds* case, for example, such a public interest arose out of the fact that a reversal of the order appealed from would have increased the total number of establishments operating under liquor licenses in the city of Warwick. This, we felt, constituted a matter of substantial public interest, the impairment of which could seriously impede the local board's interests in limiting the number of such establishments.

We held in *Reynolds* that this court has "* * * allowed

a local board to petition for certiorari to review a decision of the administrator where the board alleged in substance that he had exceeded his jurisdiction by unlawfully invading theirs. *Romano* v. *Daneker,* 78 R. I. 79; *Board of License Comm'rs* v. *Daneker,* 78 R. I. 101." *Board of Police Comm'rs* v. *Reynolds, supra,* at 177, 133 A.2d at 741.

However, in the instant case the interest is hardly one of the public. Rather, it is the private interest of the possessor of the license which is involved. Of course, a local licensing agency must always consider the public interest whenever it grants or refuses a license. However, we are constrained to conclude that no *substantial* public interest such as the jurisdictional question which arose in *Reynolds* exists here which would move us to confer standing upon the local licensing agency to prosecute this appeal.

In order to preclude further litigation of this matter, we think we should consider also the question whether the state licensing authority has, under the pertinent statutes, jurisdiction to review a decision of a local licensing authority involving an application for a relocation of a license within a municipality in which that license has already been issued. It is settled that it is within the inherent power of this court to set aside a judgment that is void for want of jurisdiction on the part of the court that entered it. *Pollins* v. *McGovern,* 110 R. I. 186, 291 A.2d 418 (1972); *Lamarche* v. *Lamarche,* 108 R. I. 213, 273 A.2d 860 (1971). It may well be argued that the order of the state licensing authority, in effect, is a judgment and that if it were issued without jurisdiction by a state licensing authority, it could be vacated by this court on that ground. In order to settle the matter, therefore, we will consider the question raised by the parties in the agreed statement of facts.

The appellate jurisdiction of the state licensing authority is conferred upon it in §3-7-21. In that section there

is an enumeration of three specific classes that have the right to appeal from a decision of a local licensing authority to the state licensing authority. These are, first, any petitioner applying for a license; second, any person authorized to protest against the granting of a license; and, third, the holder of any license whose license shall have been revoked or suspended by any local board or authority. What we are asked to decide, then, is whether the enumeration in §3-7-21 should be construed to exclude those who hold a license already granted in a municipality and are seeking from the local licensing authority permission to relocate it in other premises within the same municipality.

The local licensing authority argues that the state licensing authority is without jurisdiction to review a decision on the relocation of a license by a local authority within a municipality. It bases this argument on the provisions of §3-5-19, which provide, in pertinent part: "The board, body or official which shall have issued any license under this title may permit such license to be used at any other place within the limits of the town or city where the same was granted * * *." The local licensing authority argues that, by virtue of this grant of authority to it, its decisions on the relocation of licenses within the municipality are final and are not subject to review. This is to argue, in other words, that the holder of an existing license seeking to relocate that license within the municipality is not included within those having a right of appeal from the local authority's decision enumerated in §3-7-21.

This argument, in our opinion, overlooks the further provision contained in §3-5-19, which reads: "* * * but in all cases of change of licensed place or of transfer of license, said issuing body shall, before permitting such change or transfer, give notice of the application for such change or transfer *in the same manner* as is provided in this chapter in *case of original application for such license * * *.*"

(emphasis ours) It is clear from this provision of the statute that the applicant for permission to relocate an existing license is subjected to the same burdens concerning notice and the opportunity for others to remonstrate against the change as would rest upon him were his application for the issuance of an original license.

A perusal of the pertinent provisions of §3-5-19, in our opinion, makes clear the legislative intention that while jurisdiction to permit the relocation of existing licenses would vest originally in the local licensing authority, the holder of the existing license was put in a status similar to that of an applicant for an original license. He would be subject to any legal impediment to the transfer of the license to a new location and would be subject to the remonstrances of those entitled to object to its relocation. In other words, the Legislature intended that such an applicant for a relocation of an existing license would partake fully of the character of an applicant for an original license.

We have repeatedly said that we will, in construing the statute, consider the reasonableness of the result of a particular interpretation. In the instant case, to construe the statute as burdening the applicant for relocation of an existing license with all the burdens that attach to an original applicant without giving him the same right to appeal the ruling of the local licensing authority as is possessed by the original applicant would be arbitrary and result in an obvious inequity. We will not assume that the Legislature, in enacting legislation, intended to reach impractical, absurd, or inequitable results. *Braman* v. *Wawaloam Reservation, Inc.,* 107 R. I. 270, 267 A.2d 410 (1970); *Mason* v. *Bowerman Bros.,* 95 R. I. 425, 187 A.2d 772 (1963). We conclude, therefore, that the Legislature intended to include within the appeal provisions of §3-7-21 an applicant seeking permission to relocate an existing license, and, therefore, the

state licensing authority had jurisdiction to review the decision of the local licensing authority.

The petition for certiorari is denied and dismissed, and the writ heretofore issued is quashed.

POWERS, J.   I agree with the Chief Justice and my brother, Paolino, that the petitioners in their capacity as the Board of Licensing Commissioners of the City of East Providence were without standing to obtain judicial review of the liquor control administrator's decision *in the Superior Court*.   Indeed, it was my impression that this question had been so resolved by the holding of the majority in *DeCesare* v. *Board of Elections*, 104 R. I. 136, 242 A.2d 421 (1968). There, a primary election candidate who was refused a certificate by the local board of canvassers appealed from such refusal to the State Board of Elections as authorized by statute.   The Board of Elections reversed the local board of canvassers and the latter sought judicial review of that decision in the Superior Court.   The appeal to the Superior Court in that case, as in the case at bar, was based on the provisions of now G. L. 1956 (1969 Reenactment) §42-35-15(a), the Administrative Procedures Act.

Said section 15(a), insofar as it is material here, expressly provides:

> "Any person *who has exhausted all administrative remedies available to him within the agency,* and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter." (emphasis mine)

Section 42-35-15(b) expressly provides that such judicial review shall be had in the Superior Court.

It is difficult for me to understand how a local administrative board qualifies as one who might have a remedy to pursue within the administrative agency of which it is a part.   Furthermore, keeping the function of the instant board in mind and considering that the appeal from it to the liquor control administrator provided the appellant with a

hearing de novo, *Hallene* v. *Smith,* 98 R. I. 360, 201 A.2d 921 (1964), and *Cesaroni* v. *Smith,* 98 R. I. 377, 202 A.2d 292 (1964), it is not reasonable to conclude that the Legislature intended to add to the burdens of the Superior Court the right of local boards to question the decision of the administrator whenever that official, exercising the prerogatives given him by the Legislature, disagreed with their decisions.

But this is not to say that members of local boards, as concerned public officials, have no avenue of judicial review open to them when, as is the case with the instant petitioners, they believe that the action of the administrator was taken in excess of or without jurisdiction. Although not persons aggrieved within the meaning of the Administrative Procedures Act, they do, if such be the case, have standing to petition this court for the issuance of a common law writ of certiorari. *Board of Police Comm'rs* v. *Reynolds,* 86 R. I. 172, 133 A.2d 737 (1957).

Thus, had the instant petitioners applied to this court for such writ, it would, in all probability have issued in light of the allegation that the administrator had exceeded his jurisdiction.

Although the writ in the instant case was directed to the Superior Court for review of that tribunal's action, this court has reached behind the precise prayer of the application for the writ in order to consider the question of whether the administrator had jurisdiction to rehear the licensee's application. So doing, this court has concluded, and I agree, that the petitioners' challenge to his jurisdiction lacks merit.

Concluding, it should be stressed that, as I view the procedure taken, we reached a consideration of the merits of the liquor control administrator's decision by treating the petition for certiorari as though the writ were directed to said administrator rather than to the Superior Court.

Mr. Justice Joslin, with whom Mr. Justice Kelleher joins, concurring in part and dissenting in part. While I concur in the court's judgment, I cannot agree that a local liquor licensing agency lacks standing under the Administrative Procedures Act to seek judicial review in the Superior Court of a decision of the state liquor control administrator directing it to issue a permit for the relocation of the applicant-licensee's liquor business. My grounds are threefold.

*First*, I rely on the reasons stated in my dissent in *DeCesare* v. *Board of Elections*, 104 R. I. 136, 145, 242 A.2d 421, 426 (1968). There I took issue with the majority who held that a local board of canvassers lacked standing under section 15 of the Act to ask the Superior Court to review a decision of the state board of elections which reversed one of the local board's own decisions. In my judgment the members of the board of canvassers, although not "technically aggrieved," were nonetheless "aggrieved" within the contemplation of the Act because they acted implicitly, if not expressly, as representatives of the people of the municipality who had a very real and substantial interest in the outcome of the disputed election.

A unanimous court subsequently recognized this "public interest" exception to the rule of technical aggrievement in *Buffi* v. *Ferri*, 106 R. I. 349, 259 A.2d 847 (1969). There the Commission for Human Rights, proceeding under the Act, applied to this court for certiorari to review a Superior Court judgment overruling one of its decisions. We recognized that no personal or property right of the commission had been adversely affected, that no burden or obligation had been imposed upon it and that therefore it was not "technically aggrieved"; but we also recognized that the public was vitally concerned that no person be denied housing accommodations because of his race, color, religion or country of ancestral origin. Accordingly, we held that the commission represented the people and acted for the general

public and thereby acquired standing under the Act to seek judicial review of a Superior Court judgment which might have otherwise gone unreviewed.

We reached that conclusion notwithstanding section 16 of the Act which says that the only person who may seek review of a final judgment of the Superior Court rendered in proceedings brought under the Act is a party in interest who has been "aggrieved" by a final judgment of that court.

*Second*, while I do not equate the importance of the public's interest in the transfer of a liquor license with that which it has in "* * * the removal of the hateful barriers of discriminatory practices based upon race, color, religion or ancestry," I cannot ignore the fact that long before our decisions in *Buffi* v. *Ferri, supra,* and in *DeCesare* v. *Board of Elections, supra,* this court subscribed to the view that in some types of liquor cases a local agency's representation of the public interest could serve as a satisfactory substitute for "technical aggrievement."

Thus, in *Romano* v. *Daneker,* 78 R. I. 79, 79 A.2d 175, (1951), we quashed a decision of the state liquor control administrator overruling a local licensing agency's determination with respect to the transfer of a license. Although the question of the local board's standing was not brought into controversy in the *Romano* case, the court's subsequent decision in *Board of Police Comm'rs* v. *Reynolds,* 86 R. I. 172, 133 A.2d 737 (1957), clearly evidences its judgment that a local agency has standing to apply for the prerogative writ of certiorari in order to challenge the state liquor control administrator's authority either to issue a liquor license in excess of the number authorized by local law or to order the issuance of a permit for the relocation of premises used in the conduct of a liquor business. *Reynolds* expresses that view in 86 R. I. at 178, 133 A.2d at 741, where the court says:

"In the circumstances of this case *as in the cited cases*[1] we are of the opinion that the writ should not be quashed on the grounds alleged in the motion[2]. The board in our opinion are not in a position comparable to that of the probate judge who sought to appeal in *Bowles* v. *Dannin*, 62 R. I. 36, 2 A.2d 892 (1938), *supra*. On the contrary we think that at least on such a narrow question as is raised in their petition they may very well be considered as representing the people of Warwick who have a real interest in preventing the administrator from exercising power in granting liquor licenses beyond the maximum number which has been fixed by their local law." (emphasis added)

*Third,* the Legislature contemplated that the local licensing agency would have the prerequisite standing. That intention is evidenced by G. L. 1956, §3-5-19, as amended, which has been construed as providing that "[a]n application for transfer should be dealt with as if it were an original application," *Manoogian* v. *Williamson*, 89 R. I. 426, 430, 153 A.2d 165, 168 (1959), and by §3-5-17, which in the case of an original application requires notice to the general public by advertisement and a fair opportunity for remonstrants to make their objections known at a hearing. The imposition of those requirements as a precedent to the transfer of a license assumes that the general public has an interest in a proposed relocation. If that interest were lacking, notice to the public would serve no useful purpose, and we do not impute to the Legislature an intent to enact

---

[1]The cited cases referred to appear in *Board of Police Comm'rs* v. *Reynolds,* 86 R. I. at 177, 133 A.2d at 741, and are *Romano* v. *Daneker,* 78 R. I. 79, 79 A.2d 175 (1951); and *Board of License Comm'rs* v. *Daneker,* 78 R. I. 101, 79 A.2d 614 (1951).

[2]One ground is set out in the opinion as follows: "The administrator on his part moved to quash the writ of certiorari on the ground that the board was not a party in interest or aggrieved by his decision and therefore was without legal standing to ask this court to issue certiorari to review such decision." 86 R. I. at 175, 133 A.2d at 740.

legislation devoid of purpose. *Ewing* v. *Frank,* 103 R. I. 96, 234 A.2d 840 (1967); *Preservation Society* v. *Assessor of Taxes,* 99 R. I. 592, 209 A.2d 701 (1965).

*Donald A. McDonald,* City Solicitor, *John L. Sousa,* Asst. City Solicitor, *Joseph T. Little,* Asst. City Solicitor, for petitioners.

*Alexander G. Teitz,* Special Asst. Attorney General, for Liquor Control Administrator; *Thomas F. Farrelly,* for East Providence Beverage Company, respondents.